OPINION
{¶ 1} Defendant, Steven Brigner, appeals from his conviction and sentence for unlawful sexual conduct with a minor.
 {¶ 2} In December of 2001, fourteen year old Jamie Isaacs met Defendant, a twenty year old student at Wright State University, through the internet. Defendant used the screen names "TBear420" and "Double1Toker." Defendant often stayed at his grandmother's condominium in Beavercreek, where he had access to a computer in the basement.
 {¶ 3} On April 4, 2002, Defendant and Isaacs agreed to meet. Isaacs left her home in Riverside where she lived with her parents and walked to a nearby intersection, where Defendant picked her up in his red Dodge Neon. They stopped at a gas station and Defendant purchased alcohol for them to consume. They then proceeded to Defendant's grandmother's condominium in Beavercreek, where they engaged in sexual intercourse in the basement. Defendant later drove Isaacs back to her home in Riverside.
 {¶ 4} About one week later Defendant went to Isaacs' home one evening while her parents were out. Isaacs' parents came home unexpectedly and found them together. Defendant initially lied about his identity, but then gave Isaacs' parents his wallet and ran from the house, leaving behind his driver's license. That information was copied down by Jamie Isaacs' mother.
 {¶ 5} Jamie Isaacs spent the following night with her aunt because her parents were away from home. Jamie Isaacs and her aunt used a government website to obtain Defendant's criminal record. Jamie discovered that Defendant had been previously convicted of a sex offense. That upset her, and Jamie eventually told her parents that she had engaged in sexual intercourse with Defendant, prompting them to contact police.
 {¶ 6} A criminal complaint was filed against Defendant. He was arrested outside his grandmother's condominium by his parole officers on a parole violation. Defendant's parole officers then searched Defendant's basement bedroom and discovered pornography and marijuana. They also discovered a computer and learned that Defendant had access to the internet. Defendant's parole was subsequently revoked.
 {¶ 7} Detective Sumner of the Beavercreek police interviewed Defendant, who admitted he had talked to a number of girls named Jamie on the internet. Defendant denied using the screen name "Double1Toker," and he claimed that he did not have access to his grandmother's computer. Defendant also denied having sex with any girls at his grandmother's condominium, but he admitted it was possible he could have had a physical relationship with some girl he met over the internet.
 {¶ 8} Detective Sumner showed Jamie Isaacs a photo line-up containing Defendant's picture. She identified Defendant as the person with whom she had engaged in sexual intercourse.
 {¶ 9} Detective Sumner subpoenaed records from A.O.L. and discovered that the screen names "TBear420" and "Double1Toker" were part of an account in the name of Defendant's grandmother. Laboratory analysis of the hard drive taken from Jamie Isaacs' computer confirmed online conversations between Defendant and Isaacs. Defendant's girlfriend, when questioned by police, confirmed that Defendant had access to the internet via a computer in the basement of the Beavercreek condominium, and that he used the two screen names mentioned.
 {¶ 10} On March 3, 2003, Defendant was indicted on two counts of unlawful sexual conduct with a minor in violation of R.C. 2907.04. Count one was a second degree felony due to Defendant's previous convictions for that same offense. Count two was a fourth degree felony.
 {¶ 11} A jury trial commenced on or about January 13, 2004, but ended in a mistrial due to a hung jury, which was deadlocked eleven to one in favor of conviction. Defendant was retried before a jury beginning on April 12, 2004, and was found guilty of count one. Count two was dismissed before trial began.
 {¶ 12} The trial court sentenced Defendant to the maximum term of eight years in prison and classified him a sexual predator. Defendant timely appealed to this court from his conviction and sentence.
 FIRST ASSIGNMENT OF ERROR {¶ 13} "THE APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL IN VIOLATION OF THE FIFTH, FOURTEENTH AND SIXTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION."
 {¶ 14} In order to demonstrate ineffective assistance of trial counsel, Defendant must demonstrate that counsel's performance was deficient and fell below an objective standard of reasonable representation, and that Defendant was prejudiced by counsel's performance; that is, there is a reasonable probability that but for counsel's unprofessional errors, the result of Defendant's trial or proceeding would have been different. Strickland v. Washington (1984),466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674; State v. Bradley (1989),42 Ohio St.3d 136.
 {¶ 15} Trial counsel is entitled to a strong presumption that his conduct falls within the wide range of reasonable assistance. Id.
Moreover, hindsight is not permitted to distort the assessment of what was reasonable in light of counsel's perspective at the time, and a debatable decision concerning trial strategy cannot form the basis of a finding of ineffective assistance of counsel.
Id.
 {¶ 16} Defendant argues that the usual strong presumption that a licensed attorney is competent should not apply in this case because Defendant's trial counsel was indefinitely suspended from the practice of law by the Ohio Supreme Court for misconduct a few months after counsel completed his representation of Defendant. See Dayton Bar Association v.O'Brien, 103 Ohio St.3d 1, 2004-Ohio-3939. We disagree with Defendant's contention.
 {¶ 17} His attorney's suspension was based on conduct that has no connection with or relevance to this case. Counsel's misconduct in another case does not demonstrate deficient performance in representing Defendant in this case or support an inference that counsel's performance was deficient. There is no evidence that indicates that counsel's pending disciplinary proceedings adversely affected his representation of Defendant in this case.
 {¶ 18} At the time he represented this Defendant at trial, defense counsel was licensed, and therefore presumed competent. State v.DeVaughn (January 15, 2004), Cuyahoga App. No. 82843, 2004-Ohio-154. We further note that the effective assistance of counsel does not guarantee particular results, and counsel cannot be deemed ineffective because Defendant does not prevail at trial or achieve his desired result. Statev. Samatar, 152 Ohio App.3d 311, 2003-Ohio-1639.
 {¶ 19} Defendant argues that his trial counsel performed in a deficient manner because during his opening statement he made reference to the fact that Defendant has a criminal record and that Defendant's parole officer had arrested him in this case. According to Defendant, these remarks undermined his presumption of innocence. We disagree.
 {¶ 20} Immediately prior to defense counsel's remarks, the prosecutor, during his opening statement, made reference to Defendant's prior convictions for this same statutory offense and his parole officer. Defendant's prior convictions were elements of the offense charged here which the State was required to prove. The State indicated to the jury that it would prove those prior offenses vis-a-vis Defendant's parole officer. Clearly, the jury would hear about Defendant's prior convictions, and defense counsel remarks revealed nothing in addition to that.
 {¶ 21} Furthermore, in considering counsel's remarks in the proper context of the entire opening statements, it is evident that the point defense counsel was making is that the State jumped to a conclusion that Defendant was guilty because of his prior convictions for this same conduct, and that is why the investigation focused upon him and then snowballed. Unlike the cases relied upon by Defendant, defense counsel never expressed his belief that Defendant was guilty or wasn't telling the truth. Viewed in context, defense counsel's remarks in opening statement were not improper and do not constitute deficient performance.
 {¶ 22} Defendant next complains about counsel's remarks during closing argument which acknowledged that Defendant's family knows of his prior convictions for engaging in sexual conduct with minors, the same offense charged here. Once again considering these remarks not in isolation but in the context of the entire closing arguments, it is evident that counsel was making the point that Defendant's family members were aware of his past history and would not lie to support his alibi in this case. Counsel's apparent strategy was to convince the jury that although the State focused upon Defendant because of his prior convictions for this same conduct, it does not necessarily follow that Defendant committed this particular offense.
 {¶ 23} The critical issue in this case is the credibility of the victim and the other State's witnesses. In that regard, defense counsel pointed out the victim's failure to mention a large tattoo on Defendant's body. In stating that "Steve Brigner wants to be convicted for his prior acts for which he has already been punished," counsel may have been sarcastically emphasizing the fact that the jury should judge Defendant based upon the particular facts in this case, not his prior misconduct for which he'd been punished. Counsel did not express any opinion as to Defendant's guilt, nor did he indicate that he didn't believe his client. Counsel did not undermine Defendant's theory. He cannot be deemed ineffective merely because he employs debatable trial tactics. State v.Clayton (1980), 62 Ohio St.2d 45. Ineffective assistance of counsel has not been demonstrated.
 {¶ 24} Next, Defendant complains that counsel's performance was deficient because he refused the State's offer to stipulate Defendant's prior convictions. Because those prior convictions were an essential element of this offense that the State was required to prove, and defense counsel elected to force the State to prove its case, the State presented testimony by two different parole officers regarding Defendant's prior convictions.
 {¶ 25} While a stipulation would have avoided the necessity for that testimony and expedited the trial, defense counsel's refusal to stipulate created at least the possibility, however slight, that the State might be unable to prove Defendant's prior convictions, resulting in an offense of less serious degree. Counsel cannot be deemed ineffective simply because he employs debatable trial strategy. Clayton, supra. In any event, any stipulation by Defendant regarding his prior convictions would not have been binding upon either the State or the court, State v. Sweeney
(1999), 131 Ohio App.3d 765, and therefore would not necessarily prevent the testimony by Defendant's parole officers.
 {¶ 26} Defendant argues that because of his counsel's failure to stipulate his prior convictions the jury heard inadmissible testimony from the two parole officers concerning pornography and marijuana they found in Defendant's bedroom at his grandmother's Beavercreek condominium which they searched after arresting Defendant for a parole violation. In our view, that testimony did not result in a degree of prejudice to Defendant as contemplated by Strickland. Given the strength of the evidence demonstrating that Defendant had engaged in sexual conduct with Jamie Isaacs, a minor, and that he had twice previously been convicted of that same conduct, there is no reasonable probability that Defendant would have been acquitted of this offense but for the testimony by the parole officers concerning what they found.
 {¶ 27} Defendant next complains that counsel performed deficiently because he failed to file motions to suppress (1) testimony identifying Defendant as the perpetrator which was tainted by the State's trial preparation procedures for the first trial, during which a victim-witness advocate displayed photographs of Defendant to State's witnesses, and testimony about (2) the pornography and marijuana found in Defendant's bedroom during a search of his grandmother's Beavercreek condominium by Defendant's parole officers.
 {¶ 28} Defendant's allegation that the trial identification of him by the State's witnesses was tainted by the State's victim-witness advocate during preparations for the first trial lacks merit. The victim identified Defendant from a photo line-up well before any trial preparation occurred. Moreover, the victim's parents also had ample opportunity to view Defendant in person, and they obtained identification from him, his driver's license, well before any trial preparation took place. Thus, it is apparent that the identifications of Defendant were based upon the witnesses' own personal observations of him, not the State's trial preparation. A motion to suppress the identification evidence, had defense counsel filed one, would not have had any reasonable chance of success, and accordingly counsel was not ineffective for failing to file such a motion. State v. Gibson (1980),69 Ohio App.2d 91, State v. Benson (July 14, 1995), Montgomery App. No. 14427.
 {¶ 29} With respect to the items found in Defendant's bedroom during a search of his grandmother's condominium by his parole officers, the record demonstrates that Defendant had been given permission by his parole officer to stay periodically at his grandmother's condominium. As a condition of his parole, any place where Defendant was residing was subject to random searches by his parole officer. Such warrantless searches are constitutionally valid. State v. Benton, 82, Ohio St.3d 316, 1998-Ohio-386. There is no reasonable possibility that a Crim.R. 12(C) motion to suppress the items found by Defendant's parole officers during a search of the condominium where Defendant occasionally stayed would have succeeded, had such a motion been filed by defense counsel. Accordingly, counsel's failure to file such a motion does not constitute deficient performance, and ineffective assistance of counsel has not been demonstrated.[1]
 {¶ 30} Finally, in alleging that defense counsel was generally ineffective throughout the entire trial, Defendant, in a "shotgun" style approach, sets forth a "laundry list" of examples of alleged deficient performance by counsel including the failure to proffer evidence excluded by the court, offering exhibits which did not aid Defendant and in fact prejudiced him, failure to request redaction of inflammatory information contained in the State's exhibits, failure to effectively impeach the State's witnesses, failure to object to improper testimony and argument, failure to properly introduce defense exhibits, and failure to request that testimony be stricken or a curative instruction be given when counsel's objections were sustained.
 {¶ 31} Defendant has failed to separately argue these numerous alleged errors, and has further failed to support these claims with citation to any authority. Accordingly, we may disregard these claims. App.R. 12. We are mindful that the constitution entitles Defendant to a fair trial; not a perfect one. State v. Williams (1988), 88 Ohio St.3d 346. Nor is hindsight permitted to distort the assessment of what is reasonable in light of counsel's perspective at the time. State v. Hennis (January 7, 2005), Clark App. No. 2003CA21, 2005-Ohio-51. Most importantly, even if counsel's performance was deficient in some respects, Defendant has failed to demonstrate that he was prejudiced by that performance; that is there exists a reasonable probability that Defendant would have been acquitted but for counsel's errors. Strickland.
 {¶ 32} The outcome in this case turned largely upon the credibility of the witnesses, particularly the victim, and whether the trier or facts chose to believe the victim's version of the events. Based upon their verdict, the jury obviously chose to believe the victim, which they were entitled to do. State v. DeHass (1967), 10 Ohio St.2d 230. Ineffective assistance of counsel has not been demonstrated.
 {¶ 33} Defendant's first assignment of error is overruled.
 SECOND ASSIGNMENT OF ERROR {¶ 34} "THE TRIAL COURT'S INCORRECT RULINGS DEPRIVED APPELLANT OF A FAIR TRIAL."
 THIRD ASSIGNMENT OF ERROR {¶ 35} "APPELLANT WAS DEPRIVED OF A FAIR TRIAL BEFORE AN IMPARTIAL JUDGE."
 {¶ 36} Defendant argues that the trial judge was biased and prejudiced against defense counsel and showed favoritism to the State through evidentiary rulings which deprived Defendant of a fair trial.
 {¶ 37} For instance, prior to the commencement of trial the court sustained Defendant's motion in limine to prohibit the State from using the term "sexual predator" when referring to Defendant because he was classified only as a sexually oriented offender as a result of his previous convictions. During the trial, Detective Sumner testified that a Montgomery County website that lists sexual offenders includes photographs of "predators" and habitual offenders. Defendant's objection to that testimony was overruled by the trial court. Defendant now argues that this ruling contradicts the court's earlier ruling that Defendant not be referred to as a sexual predator, and demonstrates the court's bias against defense counsel. We disagree.
 {¶ 38} Detective Sumner testified that the web page that lists sexual offenders who are required to register does not include photographs of sexually oriented offenders, only predators and habitual offenders, and that if Defendant was a sexually oriented offender there would be no photograph of him. The victim had previously testified that there was no picture of Defendant on that website. Thus, the evidence consistently shows that Defendant was not a sexual predator or habitual offender, and the court's previous ruling was not violated or contradicted because Detective Sumner's testimony did not equate Defendant with or refer to him as a sexual predator.
 {¶ 39} A trial court has broad discretion in admitting or excluding evidence and its decision in such matters will not be disturbed on appeal absent an abuse of discretion that causes material prejudice. State v.Armstrong (January 31, 2005), Montgomery App. No. 19655, 2005-Ohio-432. An abuse of discretion means more than a mere error of law or an error in judgment. It implies an arbitrary, unreasonable, unconscionable attitude on the part cof the trial court. State v. Adams (1980), 62 Ohio St.2d 151. No abuse of discretion has been demonstrated in the trial court's admission of Detective Sumner's testimony about the Montgomery County website that lists sexual offenders.
 {¶ 40} Defendant additionally complains because the trial court overruled his objection to a portion of the prosecutor's opening statement wherein he indicated that the State would present evidence to the jury showing that Defendant had two previous convictions and that at every opportunity he had to talk about this case Defendant lied to the police. Obviously, the prosecutor was commenting upon what he believed the evidence he intended to present would show, which is the essential purpose of opening statements. Moreover, Defendant fails to explain what, if anything, was improper about those comments. No abuse of discretion in allowing these remarks during opening statement has been demonstrated.
 {¶ 41} After one of Defendant's parole officers testified about Defendant's two previous convictions for unlawful sexual conduct with a minor and identified certified copies of Defendant's convictions, Defendant objected to that testimony. During the discussion that followed, the trial judge stated that testimony by the parole officer about Defendant's prior convictions was proper because as part of his duties in supervising parolees the parole officer must know the parolee's background and his "propensities." Defendant objected to the use of the term propensities by the court in front of the jury, but the court overruled his objections.
 {¶ 42} We see nothing improper or prejudicial about the trial court's use of the word propensity in the context in which it was used. The court's point was that in order to effectively supervise a parolee, a parole officer must know the parolee's background and what offense he committed. There was no purpose to convey to the jury the notion that because Defendant has a history of engaging in unlawful sexual conduct with minors, he is therefore probably guilty of this charged offense. No abuse of discretion has been demonstrated.
 {¶ 43} Finally, Defendant complains because after one juror was excused following his admission that he read a newspaper article about the results of Defendant's first trial, Defendant's request to individually voir dire the remaining jurors concerning whether they had also seen the article or whether there had been any discussion about it was denied by the trial court. The trial court did give a cautionary instruction to the jurors not to discuss the case or absorb outside information about it. We agree with the State that questioning the jurors individually about whether they had seen or discussed the article detailing the results of Defendant's first trial could have produced the undesirable result of highlighting that issue in the minds of the jurors. We see no abuse of discretion on the part of the trial court in denying Defendant's request.
 {¶ 44} Despite Defendant's allegation that the trial court was prejudiced against defense counsel and that its evidentiary rulings favored the State, this record does not support that claim. Several of the trial court's rulings went against the State. Moreover, if Defendant believed that the trial judge was biased against him, the proper remedy was to file an affidavit of prejudice with the Supreme Court of Ohio pursuant to R.C. 2701.03. That is the exclusive means by which a litigant may claim that a common pleas judge is biased and prejudiced, and it prevents a court of appeals from addressing that issue. Armstrong, supra.
Defendant chose not to pursue that remedy.
 {¶ 45} Defendant's third and fourth assignments of error are overruled.
 FIFTH ASSIGNMENT OF ERROR {¶ 46} "THE CUMULATIVE EFFECT OF ALL ERRORS RESULTED IN APPELLANT BEING DENIED A FAIR TRIAL."
 {¶ 47} Defendant argues that the cumulative effect of the multiple errors that occurred during the trial deprived him of a fair trial. Statev. DeMarco (1987), 31 Ohio St.3d 191. In reviewing Defendant's assignments of error, however, we have not found the existence of multiple errors and hence there is no "cumulative effect."
 {¶ 48} Defendant's fourth assignments of error is overruled. The judgment of the trial court will be affirmed.
Wolff, J. And Fain, J., concur.
[1] Crim.R. 12(C) authorizes pretrial motions raising "any defense, objection, evidentiary issue, or request that is capable of determination without a trial of the general issue." The pornography and marijuana about which the parole officers testified may have been irrelevant to the general issue of guilt or innocence, and therefore inadmissible. However, that question was not one capable of determination without a trial of the general issue.