DECISION AND JUDGMENT ENTRY
{¶ 1} Kenneth Coleman appeals the judgment of the Portsmouth Municipal Court denying his motion for a new trial on the ground of juror misconduct, and the court's judgment convicting him of assault in violation of R.C. 2903.13(A). Coleman contends that the trial court abused its discretion by overruling his motion for new trial where one of the jurors failed to reveal certain facts regarding her personal dealings with the victim, the victim's son, and defense counsel. Because we find that the record contains substantial evidence to support the trial court's determination that no juror misconduct occurred, we cannot find that the trial court abused its discretion in denying Coleman's motion for a new trial. Coleman also contends that the trial court erred by placing a special condition on his probation that he not attend any Portsmouth West High School games. We disagree because we find that the condition is: (1) reasonably related to rehabilitating Coleman; (2) has some relationship to Coleman's crime; and (3) relates to conduct which is reasonably related to future criminality and serves the statutory ends of probation. Accordingly, we overrule each of Coleman's assignments of error and affirm the trial court's judgment.
 I. {¶ 2} This case arises out of a confrontation between Coleman and Darren McNeil on May 4, 2005 in which McNeil sustained injuries to his face and arm. McNeil reported the incident to the Scioto County Sheriff's Department, and Coleman was charged with assault in violation of R.C. 2903.13, a first degree misdemeanor. At trial Coleman and McNeil gave differing accounts of how the altercation began. Coleman and McNeil each testified that they were driving down the road, and each indicated that the other motioned for him to pull over.
 {¶ 3} McNeil testified that he is the high school baseball coach, and that Coleman's son is a player on his team. McNeil indicated that he and Coleman spoke briefly about an earlier ball game and playing time. When Coleman started to get irate, McNeil attempted to get back in his truck. McNeil indicated that Coleman blocked his path, and came at him, hitting him in the head and pulling him to the ground, where they wrestled until McNeil was able to get away and call the Sheriff.
 {¶ 4} Coleman testified that after he stopped his vehicle, McNeil jumped out of his truck, began hollering, and throwing fists at him. Coleman claimed that all he could do was grab a hold of McNeil to block his hits, and that when he did so, both men bounced off his truck and onto the ground, where they scuffled. He further testified that McNeil eventually stopped fighting and got up and left.
 {¶ 5} The jury also heard the testimony of Randy Shy and Sidney Staggs, who witnessed the altercation, and Deputy Kirk Jackson, who investigated the incident. After deliberating, the jury convicted Coleman. On September 12, 2005, the trial court issued a judgment entry, sentencing Coleman to ninety days in the county jail, with eighty-five days suspended and one year of probation. The court further ordered Coleman to have no contact with McNeil, and ordered him not to attend West High School games during his probation. The court placed Coleman on electronically monitored house arrest pending the execution of his jail sentence, and ordered him to pay a fine of two hundred fifty dollars plus costs.
 {¶ 6} Thereafter, Coleman filed a motion for a new trial, alleging that Taryn Malone, one of the jurors who convicted him, intentionally failed to disclose that she and/or her parents had personal dealings with Coleman, McNeil, and defense counsel. Specifically, Coleman alleged that: (1) his counsel represented Malone's father in divorce proceedings against Malone's mother; (2) Malone's mother worked with McNeil; and (3) Coleman, as a referee, had ejected Malone and her parents from a basketball game when Malone was a basketball player in the Washington-Nile schools, and as a result of the ejection, the Malone family threatened Coleman.
 {¶ 7} The trial court conducted a hearing on Coleman's motion, wherein it heard the testimony of Malone; Bart Evans, a witness to Coleman ejecting the Malone family from the basketball game; and Coleman. The trial court denied Coleman's motion, finding that Malone did not commit juror misconduct. Coleman appeals both the trial court's denial of his motion for a new trial and his sentence, raising the following assignments of error: "I. THE TRIAL COURT ERRED WHEN IT DENIED THE APPELLANT-DEFENDANT'S MOTION FOR A NEW TRIAL. II. THE TRIAL COURT ERRED WHEN IT SENTENCED THE APPELLANT-DEFENDANT BY PLACING THE SPECIAL CONDITION THAT HE NOT ATTEND ANY PORTSMOUTH WEST HIGH SCHOOL GAMES."
 II. {¶ 8} In his first assignment of error, Coleman contends that the trial court erred in denying his motion for a new trial because juror Malone committed misconduct that substantially prejudiced his right to a fair and impartial jury. Specifically, Coleman contends that Malone committed misconduct by failing to: (1) list any members of her family on the juror questionnaire; and (2) disclose her family's past dealings with Coleman, Coleman's counsel, and McNeil.
 {¶ 9} Crim.R. 33(A) provides: "A new trial may be granted on motion of the defendant for any of the following causes affecting materially his substantial rights: * * * (2) Misconduct of the jury * * *." The decision to grant or deny a motion for a new trial rests within the trial court's sound discretion. State v.Schiebel (1990), 55 Ohio St.3d 71, paragraph one of the syllabus. Accordingly, we will not reverse the trial court's denial of Coleman's motion absent an abuse of discretion. Id. An "abuse of discretion" connotes that the court's attitude is "unreasonable, arbitrary, or unconscionable." Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 219; Booth v. Booth
(1989), 44 Ohio St.3d 142, 144.
 {¶ 10} We have previously held that an inquiry into alleged juror misconduct requires a two-pronged analysis. State v.Taylor (1991), 73 Ohio App.3d 827, 833, motion for leave to appeal overruled (1991), 62 Ohio St.3d 1453. First the trial court must determine whether misconduct occurred. Id. Then, if juror misconduct is found, the court must determine whether the misconduct materially affected the appellant's substantial rights. Id.
 {¶ 11} Here, Coleman contends that Malone committed misconduct by failing to list any members of her family on the juror questionnaire. However, we find that Malone failed to bring this omission to the trial court's attention during the jury selection process. It is axiomatic that a litigant's failure to raise an issue in the trial court waives the litigant's right to raise that issue on appeal. Shover v. Cordis Corp. (1991),61 Ohio St.3d 213, 220, overruled on other grounds in Collins v.Sotka (1998), 81 Ohio St.3d 506. We will not consider any error a party failed to bring to the trial court's attention at a time when the trial court could have avoided or corrected the error.Schade v. Carnegie Body Co. (1982), 70 Ohio St.2d 207, 210,State v. Glaros (1960), 170 Ohio St. 471, 166 N.E.2d 379, paragraph one of the syllabus. Therefore, we do not consider whether Malone's failure to list her family members on the juror questionnaire constitutes misconduct.
 {¶ 12} The trial court conducted a hearing to determine whether juror Malone committed misconduct by failing to disclose her family's past dealings with Coleman, Coleman's counsel, and McNeil. At that hearing, Malone testified that she was nineteen years old and that she did not inform the court and counsel of her alleged prior knowledge of Coleman, McNeil, and counsel because "* * * I don't know you guys."
 {¶ 13} With regard to her alleged connection with Coleman's counsel, Malone indicated that she was only three years old when her parents separated. While she was aware that her father had a number of attorneys, she did not know that Coleman's counsel had represented him.
 {¶ 14} Malone also stated that she chose to have no contact with her father since she was nine years old because he liked to cause trouble and often embarrassed her in public. She remembered playing basketball in West Portsmouth for two or three years beginning in about second or third grade, and recalled being embarrassed when her father was ejected from one of her games during her first year. She did not recall who ejected her father that day, but did remember that she stayed to finish the game.
 {¶ 15} With regard to her alleged knowledge of McNeil, Malone testified that she knew that her mother worked at Western Southern Life Insurance Company for thirty-three years. But, she testified that she never saw McNeil at her mother's office or knew he worked there. Moreover, she stated that the only man she knew her mother worked with was her boss, and that McNeil was not her mother's boss.
 {¶ 16} When informed that McNeil's son graduated the same year she did, Malone inquired "Brent?" She then acknowledged that she went to school with a Brent McNeil, but indicated that he moved away when she was in the "second grade or so." She admitted having a childhood crush on Brent, but when asked, if she knew that McNeil was Brent's dad, she replied, "Now I do."
 {¶ 17} Despite Malone's testimony that she did not recall any contact with Coleman or his counsel, Coleman contends that Malone should have remembered him ejecting her father from her childhood basketball game, and should have known that his counsel represented her father in his divorce when she was all of three years old. However, we note that neither Coleman, nor his counsel recalled their connection to Malone before the jury was impaneled, although they were both presumably adults when the alleged contact occurred.
 {¶ 18} In its entry denying Coleman's motion for a new trial, the trial court noted that Malone's testimony was "consistent, credible and unshaken." The court noted that Malone's age at the time of her father's ejection from her basketball game, lent credence to her failure to remember that Coleman was the referee involved. Similarly, the court noted that Malone was only three years old at the time her parents separated. The court found that Malone did not mention any knowledge of Coleman, his counsel, or McNeil while under oath during voir dire because she did not know them.
 {¶ 19} We give deference to the trial court as the trier of fact because it is "best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." Seasons Coal Co. v. Cleveland (1984),10 Ohio St.3d 77, 80. Here, the trial court found Malone's testimony credible. Given Malone's young age at both the time of her parent's divorce, and the time Coleman ejected her father from her basketball game, and the trial court's assessment of Malone's demeanor on the witness stand, we find that the record contains substantial evidence to support the trial court's determination that no juror misconduct occurred. Therefore, we conclude that the trial court did not abuse its discretion in denying Coleman's motion for a new trial. Accordingly, we overrule Coleman's first assignment of error.
 III. {¶ 20} In his second assignment of error, Coleman contends that the trial court erred by placing the special condition on his probation that he not attend any Portsmouth West High School Games. He contends that because the incident giving rise to the charges against him did not occur on school grounds, the condition is overly broad and unnecessarily impinges upon his liberty. Specifically, Coleman argues that the condition unfairly prevents him from watching his son, a student athlete at Portsmouth West High School, participate in his high school sporting events.
 {¶ 21} A trial court has broad discretion in imposing conditions of probation. See State v. Talty,103 Ohio St.3d 177, 2004-Ohio-4888, ¶ 10, citing Lakewood v. Hartman (1999),86 Ohio St.3d 275, 1999-Ohio-101. R.C. § 2929.27 (B) provides that in addition to the specific sanctions authorized under division (A) of that section, a court imposing a sentence for a misdemeanor, other than a minor misdemeanor, "may impose any other sanction that is intended to discourage the offender or other persons from committing a similar offense if the sanction is reasonably related to the overriding purposes and principles of misdemeanor sentencing." The overriding purposes of misdemeanor sentencing are to protect the public from future crime by the offender and others and to punish the offender. R.C.2929.21(A). In order to achieve those purposes, a sentencing court must consider "the impact of the offense upon the victim and the need for changing the offender's behavior, rehabilitating the offender, and making restitution to the victim of the offense, the public, or the victim and the public." Id.
 {¶ 22} While a trial court has broad discretion in imposing probation conditions, that discretion is not limitless. State v.Jones (1990), 49 Ohio St.3d 51, 52. (Citations omitted.) In determining whether probation conditions are reasonably related to the statutory purpose of probation and overbroad, a reviewing court should consider "whether the condition (1) is reasonably related to rehabilitating the offender, (2) has some relationship to the crime of which the offender was convicted, and (3) relates to conduct which is criminal or reasonably related to future criminality and serves the statutory ends of probation." Id. at 53. (Citations omitted.)
 {¶ 23} Here, Coleman asserts that the condition is not reasonably related to his crime because the assault did not take place on Portsmouth West High School grounds. However, the record indicates that McNeil was the high school baseball coach, Coleman was the father of one of McNeil's players, and the assault occurred after Coleman waived down McNeil's car to discuss an earlier baseball game. The condition is reasonably related to rehabilitating Coleman because presumably he will again be permitted to attend the high school's games once his probation ends. The condition has some relationship to the crime for which Coleman was convicted because the record demonstrates that the altercation began with a discussion of the school baseball game, which escalated into an assault. Moreover, the condition is related to future criminality and serves the statutory ends of probation as it will reduce Coleman's opportunity to confront and assault McNeil or other Portsmouth West High School coaches based upon their coaching decisions during the term of his probation. Accordingly, we find that Coleman's second assignment of error is without merit, and we affirm the judgment of the trial court.
JUDGMENT AFFIRMED.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED and Appellee recover of Appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Portsmouth Municipal Court to carry this judgment into execution.
If a stay of execution of sentence and release upon bail has been previously granted by the trial court or this court, it is continued for a period of sixty days upon the bail previously posted. The purpose of said stay is to allow appellant to file with the Ohio Supreme Court an application for a stay during the pendency of proceedings in that court. The stay as herein continued will terminate in any event at the expiration of the sixty day period.
The stay shall terminate earlier if the appellant fails to file a notice of appeal with the Ohio Supreme Court in the forty-five day appeal period pursuant to Rule II, Sec.2 of the Rules of Practice of the Ohio Supreme Court. Additionally, if the Ohio Supreme Court dismisses the appeal prior to expiration of said sixty days, the stay will terminate as of the date of such dismissal.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Harsha, P.J.: Concurs in Judgment and Opinion.
McFarland, J.: Dissents.