[Cite as *State v. Oates*, 2013-Ohio-2609.]

IN THE COURT OF APPEALS OF OHIO
THIRD APPELLATE DISTRICT
HARDIN COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,              CASE NO. 6-12-19

    v.

ABRAHAM OATES, JR.,             O P I N I O N

    DEFENDANT-APPELLANT.

Appeal from Hardin County Common Pleas Court
Trial Court No. 20122050 CRI

Judgment Affirmed

Date of Decision:   June 24, 2013

APPEARANCES:

    *Todd A. Workman* for Appellant

    *Bradford W. Bailey and Destiny R. Hudson* for Appellee

**PRESTON, P.J.**

{¶1} Defendant-appellant, Abraham Oates, Jr., appeals the Hardin County Court of Common Pleas' entry sentencing him to one year of community control after a jury found him guilty of assault of a school teacher on school premises in violation of R.C. 2903.13(A)/(C)(2)(e),[1] a felony of the fifth degree. Oates argues that he was denied effective assistance of counsel and that the community-control condition barring him from attending "any Kenton City Schools athletic events" is overbroad and unnecessarily impinges on his liberty. For the following reasons, we affirm.

{¶2} On March 1, 2012, the Hardin County Grand Jury indicted Oates on one count—assault of a school teacher on school premises in violation of R.C. 2903.13(A)/(C)(2)(e), a fifth degree felony. (Indictment, Doc. No. 1). The indictment stemmed from a confrontation between Oates and his son's basketball coach, Ryan Ludwig, following a basketball game on February 7, 2012. (*Id.*); (Trial Tr. at 179, 189-190). On March 29, 2012, Oates entered a plea of not guilty. (Entry, Doc. No. 10).

{¶3} The case proceeded to a jury trial on November 5, 2012. (*See* Judgment Entry, Doc. No. 23). The jury found Oates guilty of the indicted count. (*Id.*). On December 13, 2012, the trial court sentenced Oates to one year of

---

[1] Since Oates was indicted and tried, amendments to R.C. 2903.13 took effect. The subsection addressing assaults of school teachers occurring on school premises is now found at R.C. 2903.13(C)(3)(e), rather than R.C. 2903.13(C)(2)(e).

community control with the Community Corrections Department serving Hardin County. (Sentencing Tr. at 23-24). (*See also* Entry of Sentence, Doc. No. 28). Among the conditions of Oates' community control, the trial court ordered that Oates "[h]ave no contact with Ludwig" and "[n]ot attend any Kenton City Schools athletic events." (Entry of Sentence, Doc. No. 28). The trial court filed its entry of sentence on December 17, 2012. (*Id.*).

{¶4} On December 28, 2012, Oates filed a notice of appeal. (Doc. No. 30). Oates raises two assignments of error for our review.

### Assignment of Error No. I

**The defendant's right to the effective assistance of counsel guaranteed under the [sic] Section 10, Article I of the Ohio Constitution, and Sixth and Fourteenth Amendments to the United States Constitution was violated by trial counsel's failure to properly prepare for trial.**

{¶5} In his first assignment of error, Oates argues that he was denied effective assistance of counsel because his trial counsel failed to request a self-defense jury instruction, despite trial counsel "present[ing] the evidence in support of the self defense claim." (Appellant's Brief at 13). Oates argues that had the court given the jury a self-defense instruction, the jury "likely" would have concluded that Oates acted in self-defense. (*Id.* at 12). Oates also argues that trial counsel was ineffective because he failed to review the trial court's proposed jury

instructions and because "he did not know the elements of the only charge before the jury." (*Id.*)

**{¶6}** A defendant asserting a claim of ineffective assistance of counsel must establish: (1) the counsel's performance was deficient or unreasonable under the circumstances; and (2) the deficient performance prejudiced the defendant. *State v. Kole*, 92 Ohio St.3d 303, 306 (2001), citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052 (1984).

**{¶7}** In order to show counsel's conduct was deficient or unreasonable, the defendant must overcome the presumption that counsel provided competent representation and must show that counsel's actions were not trial strategies prompted by reasonable professional judgment. *Strickland*, 466 U.S. at 689. Counsel is entitled to a strong presumption that all decisions fall within the wide range of reasonable professional assistance. *State v. Sallie*, 81 Ohio St.3d 673, 675 (1998). Tactical or strategic trial decisions, even if unsuccessful, do not generally constitute ineffective assistance. *State v. Frazier*, 61 Ohio St.3d 247, 255 (1991). Rather, the errors complained of must amount to a substantial violation of counsel's essential duties to his client. *See State v. Bradley*, 42 Ohio St. 3d 136, 141-142 (1989), citing *State v. Lytle*, 48 Ohio St.2d 391, 396 (1976).

**{¶8}** Prejudice results when "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been

different." *Bradley*, 42 Ohio St.3d at 142, quoting *Strickland*, 466 U.S. at 691 (internal quotation marks omitted). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*, quoting *Strickland*, 466 U.S. at 694 (internal quotation marks omitted).

{¶9} In this case, Oates argues that his attorney denied him effective assistance of counsel by failing to request a self-defense jury instruction. "Generally, the failure to request jury instructions is purely a matter of trial tactics and will not be disturbed upon review." *State v. Herrington*, 9th Dist. No. 25150, 2010-Ohio-6455, ¶ 11, citing *State v. Clayton*, 62 Ohio St.2d 45, 47-49 (1980). "A court's jury instructions must be based on the actual issues in the case as presented by the evidence. * * * Thus, a court should not give an instruction unless it is specifically applicable to the facts in the case." *State v. Fritz*, 163 Ohio App.3d 276, 2005-Ohio-4736, ¶ 19 (2d Dist.), citing *State v. Guster*, 66 Ohio St.2d 266 (1981) (additional citations and internal quotation marks omitted).

{¶10} "Self-defense is an affirmative defense, which means that the burden of going forward is on the defendant who must prove each element by a preponderance of the evidence." *State v. Kimmell*, 3d Dist. No. 16-10-06, 2011-Ohio-660, ¶ 19, citing R.C. 2901.05 and *State v. Densmore*, 3d Dist. No. 7-08-04, 2009-Ohio-6870, ¶ 24. Affirmative defenses such as self-defense "'do not seek to negate any of the elements of the offense which the State is required to prove' but

rather they 'admit[ ] the facts claimed by the prosecution and then rel[y] on independent facts or circumstances which the defendant claims exempt him from liability.'" *State v. Smith*, 3d Dist. No. 8-12-05, 2013-Ohio-746, ¶ 32, quoting *State v. Martin*, 21 Ohio St.3d 91, 94 (1986).

{**¶11**} In *Kimmell*, this Court explained the elements of self-defense where the defendant is alleged to have used non-deadly force:

> (1)   the defendant was not at fault in creating the situation giving rise to the affray, and (2) the defendant (even if mistaken) had a bona fide belief (which means a belief that was both objectively reasonable and subjectively honest) that he was in imminent danger of any bodily harm (whether it be deadly or non-deadly).   2011-Ohio-660, at ¶ 19, quoting *State v. Williams*, 7th Dist. No. 07 MA 55, 2008-Ohio-6637, ¶ 15 (additional citations and internal quotation marks omitted).  *See also State v. Vielma*, 3d Dist. No. 11-11-03, 2012-Ohio-875, ¶ 37.

"To determine whether an instruction on self-defense is warranted, the trial court must determine 'whether the defendant has introduced sufficient evidence, which, if believed, would raise a question in the minds of reasonable men concerning the existence of such issue.'" *Fritz*, 163 Ohio App.3d 276, at ¶ 19, quoting *State v.*

*Melchior*, 56 Ohio St.2d 15 (1978), paragraph one of the syllabus (additional citations and internal quotation marks omitted).

{¶12} A review of the record shows self-defense was not the theory pursued by Oates and his trial counsel. To prove that Oates assaulted Ludwig, the State was required to establish that Oates "knowingly cause[d] or attempt[ed] to cause physical harm to [Ludwig]." *State v. Galbraith*, 3d Dist. No. 9-11-61, 2012-Ohio-5231, ¶ 34, quoting R.C. 2903.13(A) (internal quotation marks omitted). "The term 'knowingly' means when a person 'is aware that his conduct will probably cause a certain result or will probably be of a certain nature.'" *Id.*, quoting R.C. 2901.22(B).

{¶13} The State called Ludwig as a witness at trial, and he testified that Oates punched him in the face with a closed fist. (Trial Tr. at 81-82). Oates did not admit the facts claimed by the prosecution and instead attempted to negate the elements of the offense. Most notably, he testified that he never struck Ludwig:

> The second time when he came back at me more aggressive, I felt like he was coming at me as close as he was. I grabbed his hand. As I grabbed his hand, he pulled back and slapped himself in the head. That's where, if any punch happened, that was the only thing as far as a physical confrontation, that's where that happened. (*Id.* at 190).

So while Oates testified that he felt like Ludwig "was coming at me," he also testified that "the only thing as far as a physical confrontation" occurred when Ludwig slapped himself in the head when pulling his hand away from Oates' grasp. (*Id.*). This testimony is inconsistent with the affirmative defense of self-defense, in which a defendant "concedes [that] he had the purpose to commit the act, but asserts that he was justified in his actions." *Herrington*, 2010-Ohio-6455, at ¶ 13, quoting *State v. Griffin*, 9th Dist. No. 23459, 2007-Ohio-1944, ¶ 7 (internal quotation marks omitted). By his testimony, Oates hoped to convince the jury that he neither caused nor attempted to cause physical harm to Ludwig, and that he did not act "knowingly" at any rate. We conclude that a self-defense jury instruction would have been improper because Oates failed to present sufficient evidence to raise the defense, and trial counsel, therefore, did not act deficiently or unreasonably when he failed to request a self-defense instruction. *Id. See also Vielma*, 2012-Ohio-875, at ¶ 36, 38, 49.

{¶14} Oates argues that trial counsel began to recite a portion of the self-defense standard in his closing argument before the trial court judge stopped him, and that this demonstrates the trial counsel acted unreasonably by failing to request a self-defense jury instruction. This argument lacks merit for at least three reasons. First and foremost, we concluded above that a self-defense instruction

would have been improper because Oates failed to present sufficient evidence to raise the defense. Self-defense was not Oates' theory of the case or trial strategy.

{¶15} Second, it is unclear, at best, whether trial counsel referred to the affirmative defense of self-defense in his closing argument. The following exchange—which Oates relies on in his brief—suggests trial counsel was attempting to argue that it was Ludwig who assaulted Oates, not that Oates was acting in self-defense:

[Trial counsel]: Now [the prosecuting attorney] makes it a big point on the stand with my client saying who touched him first, who touched him first? Yet at the same time, talking about pointing in people's faces, [the prosecuting attorney] says, and rightfully so, I think that's the instruction that you'll probably get; but you don't have to touch somebody *to assault* them, just put them in this reasonable fear. *It goes both ways.*

Judge: [Trial counsel], I'm going to interject. That's not the law. The law says cause or attempt to cause physical harm.

[Trial counsel]: The Court is correct, I'll leave it to the Court.

(Emphasis added.) (Trial Tr. at 248).

At no point in trial counsel's opening statement or closing argument did he refer to self-defense, and the excerpt above from his closing argument does not suggest, as Oates now argues, that self-defense was his theory of the case at trial.

{¶16} Third, in trial counsel's closing argument, he disputed the State's version of the facts and suggested that Oates did not punch Ludwig:

> So really we're coming down to Mr. Oates, my client's rendition of the facts, and Mr. Ludwig's.
>
> * * *
>
> Now, I was taught that when you get a little upset, and you're starting to lose your cool, remove yourself from the situation. That's what Mr. Oates said he did. So I don't think it's necessarily irresponsible to be sitting out in your car to cool off. Yes, that probably admits you were a little warmer, but isn't that the action you're suppose [sic] to be doing? So to say that because you're cooling off, and therefore you hit somebody, I don't think that goes so far. That's not enough, by itself. You have to look at all the evidence and all that's been presented. (Trial Tr. at 247, 248-249).

When trial counsel initially made and then renewed Oates' Crim.R. 29 motion for acquittal, he argued that the State had not met its burden of proving the elements of assault:

> We believe that * * * each element has not been satisfied, though some may have.
>
> * * *
>
> We believe that though some of the elements are clear with respect to the status of the alleged victim, we do believe that the knowingly aspect and the issues around the encounter give more than just a reasonable doubt, Your Honor, we believe that it does not meet the standard that the State is required to produce at this point. (Trial Tr. at 162-163, 215).

These excerpts reiterate that Oates' trial strategy was to dispute the State's version of the facts and attempt to negate the elements of assault, not to accept the State's version of the facts and attempt to prove self-defense through independent facts or circumstances. *See Smith*, 2013-Ohio-746, at ¶ 32, quoting *Martin*, 21 Ohio St.3d at 94. "As this Court has previously noted, 'debatable strategic and tactical decisions may not form the basis of an ineffective assistance of counsel claim, even if a better strategy might have been utilized.'" *State v. Rodgers*, 3d Dist. No. 5-10-35, 2011-Ohio-3003, ¶ 41, quoting *State v. Wilson*, 3d Dist. No. 1-09-53, 2010-Ohio-2947, ¶ 14 (additional citations omitted).

{¶17} Oates also argues that trial counsel provided ineffective assistance by failing to know the elements of assault under R.C. 2903.13(A)/(C)(2)(e) and by

failing to read the trial court's proposed jury instructions. These arguments lack merit. When trial counsel moved for acquittal under Crim.R. 29 and later renewed that motion, he referred specifically to some of the elements of assault and demonstrated a knowledge of the offense. (*See* Trial Tr. at 162-163, 215). Oates bases his argument that trial counsel did not read the proposed jury instructions on trial counsel's lack of response when the trial court judge asked both parties' counsel whether they had an opportunity to read the proposed jury instructions, on trial counsel's failure to request a self-defense instruction, and on his statement, "I think that's the instruction that you'll probably get," during his closing argument. The record reflects that the prosecuting attorney informed the trial court that he did not have his copy of the proposed instructions, so the trial court went into recess. (*See id.* at 216-217). Moreover, as we stated above, a self-defense jury instruction would have been inappropriate in this case. Finally, at the time trial counsel gave his closing argument, the jury instructions were indeed only "proposed," so his suggestion that the jury would "probably" receive an instruction was accurate. (*See id.* at 216).

{¶18} In sum, Oates has failed to satisfy the first prong of the ineffective-assistance-of-counsel test—namely, that his trial counsel's performance was deficient or unreasonable under the circumstances. Even assuming he could prove that first prong, Oates has failed to satisfy the second prong—prejudice. The

record reflects that the jury was presented with differing versions of the facts, and the jurors apparently found the State's witnesses more credible. Therefore, we cannot say that there is a reasonable probability the outcome of the proceeding would have been different had Oates pursued a self-defense theory. *See State v. Brigner*, 2d Dist. No. 04CA72, 2005-Ohio-4524, ¶ 31-32.

{¶19} Oates' first assignment of error is, therefore, overruled.

**Assignment of Error No. II**

**The trial court abused its discretion when it ordered Appellant, as a term of his community control, to "not attend any Kenton City Schools athletic events. [sic]**

{¶20} In his second assignment of error, Oates argues that the community-control sanction imposed by the trial court barring him from "attend[ing] any Kenton City Schools athletic events" unnecessarily impinges on his liberty and is overbroad. (Entry of Sentence, Doc. No. 28). We disagree.

{¶21} "We review the trial court's imposition of community-control sanctions under an abuse-of-discretion standard." *State v. Talty*, 103 Ohio St.3d 177, 2004-Ohio-4888, ¶ 10. "A trial court has broad discretion in imposing community-control sanctions." *State v. Westrick*, 196 Ohio App.3d 141, 2011-Ohio-1169, ¶ 15 (3d Dist.), citing *Talty*, 2011-Ohio-1169, at ¶ 10. A trial court's discretion in imposing community-control sanctions is not limitless, however. *Id.*, citing *State v. Jones*, 49 Ohio St.3d 51, 52 (1990). Rather, community-control

conditions must be reasonably related to the statutory ends of community control and must not be overbroad. *Id.*, citing *Talty*, 2011-Ohio-1169, at ¶ 16.

{¶22} In *Jones*, the Supreme Court of Ohio relied on a "commonsense" understanding of the conditions of supervision to determine whether a condition is overbroad and held that "[c]ourts imposing conditions on probation are not expected to define with specificity the probationer's behavior in all possible circumstances. Rather, the conditions must be clear enough to notify the probationer of the conduct expected of him[.]" *Westrick*, 196 Ohio App.3d 141, at ¶ 15, quoting *Jones*, 49 Ohio St.3d at 55 (internal quotation marks omitted). "The goals of community control are 'rehabilitation, administering justice, and ensuring good behavior.'" *Id.*, quoting *Talty*, 2011-Ohio-1169, at ¶ 16. "Thus, 'courts should consider whether the condition (1) is reasonably related to rehabilitating the offender, (2) has some relationship to the crime of which the offender was convicted, and (3) relates to conduct which is criminal or reasonably related to future criminality and serves the statutory ends of probation.'" *Id.*, quoting *Jones*, 49 Ohio St.3d at 52.

{¶23} Both Oates and the State cite *State v. Coleman*, 4th Dist. No. 05CA3037, 2006-Ohio-3200, in support of their arguments. *Coleman* involved a confrontation between a high school boys' baseball coach and the father of one of the coach's players. *Id.* at ¶ 2-3. The coach and father were both driving down the

road, and each testified that the other motioned for him to pull over. *Id.* at ¶ 2. A physical confrontation ensued, resulting in the men wrestling on the ground. *Id.* at ¶ 3-4. The jury convicted the father of assault. *Id.* at ¶ 5. The trial court sentenced him to jail time and one year of probation. *Id.* Among the conditions of his probation, the trial court ordered the father to have no contact with the coach and to not attend "West High School games." *Id.*

{¶24} On appeal, the father argued "that because the incident giving rise to the charges against him did not occur on school grounds, the condition [was] overly broad and unnecessarily impinge[d] upon his liberty." *Id.* at ¶ 20. In affirming the judgment of the trial court, the Fourth District concluded that the probation condition had some relationship to the father's crime because the victim was the high school baseball coach, the father's son was one of the coach's players, and the assault stemmed from an argument about an earlier school baseball game. *Id.* at ¶ 23. The Fourth District also concluded that the condition was reasonably related to rehabilitating the father because presumably he would again be permitted to attend the high school's games once his probation ended. *Id.* Finally, the Fourth District concluded that the condition was related to future criminality and served the statutory ends of probation because it would reduce the father's opportunity to confront and assault the victim or other coaches based upon their coaching decisions during the term of the father's probation. *Id.*

{¶25} Oates argues that his situation is distinguishable from that in *Coleman* because Oates' community-control condition—to "[n]ot attend any Kenton City Schools athletic events," which covers an entire school district—is much broader than the probation condition in *Coleman*—to not attend "West High School games." Oates also argues that Coleman's prohibition was on "games," whereas his prohibition is more broadly on "athletic events." Finally, Oates argues that the condition is not related to future criminality, because there is no evidence that Oates' son plays for any other schools in the district or that Ludwig would be present at any of the Kenton City Schools athletic events, and because there is no reason to believe Oates would commit another crime in the future.

{¶26} We are not persuaded by Oates' arguments and conclude that the trial court did not abuse its discretion in imposing the community-control condition. The analysis in *Coleman* is persuasive, and we apply the same analysis here. First, the condition that Oates not attend Kenton City schools athletic events has some relationship to his crime because it took place on school premises following a basketball game and involved the assault of a coach/school teacher during an argument about Oates' son's playing time. *See Coleman*, 2006-Ohio-3200, at ¶ 23; (Trial Tr. at 80). School premises and athletic events are the underlying themes of both the condition and the crime.

**{¶27}** Second, as in *Coleman*, the condition in this case is reasonably related to rehabilitating Oates because presumably Oates will once again attend Kenton City Schools athletic events once his community control ends. 2006-Ohio-3200, at ¶ 23.

**{¶28}** Third, the condition relates to conduct that is reasonably related to future criminality and serves the statutory ends of community control. Ludwig is an eighth-grade teacher at Kenton Middle School. (Trial Tr. at 72). As the State points out, during the 2011-2012 school year, Ludwig was the junior varsity basketball coach and a middle school coach. (*Id.* at 73). He is presently an assistant varsity football coach at a different school district. (*Id.*) It is clear from the record that Ludwig is a multi-sport coach who could take on new coaching positions while Oates is on community control and who obviously spends time in the Kenton Middle School building where he teaches. Requiring that Oates not attend any Kenton City Schools athletic events—which would include athletic events at Kenton High School, which Oates' son attends, and at Kenton Middle School where Ludwig teaches—is reasonably aimed at keeping Oates out of situations like the one that led to the assault in this case.

**{¶29}** We are not persuaded by Oates' argument that the phrase "athletic events" is overly broad. Coaches and student athletes are present at non-game athletic events such as awards ceremonies and fundraisers just as they are present

at games.  We also reject Oates' argument that, because there is no reason to believe Oates would commit another crime, the condition is unrelated to future criminality and does not serve the statutory ends of community control.  One of the goals of community control is ensuring good behavior.  *Westrick*, 196 Ohio App.3d 141, at ¶ 15, quoting *Talty*, 2011-Ohio-1169, at ¶ 16.  Oates assaulted his son's coach after a basketball game, and the community-control condition is aimed at keeping Oates out of those situations and ensuring his good behavior.  We also note, as the trial court did, that even at his sentencing hearing, Oates expressed his displeasure with his son's and some other players' lack of playing time.  (Sentencing Tr. at 17-21).  For these reasons, the condition relates to conduct that is reasonably related to future criminality and serves the statutory ends of community control.

{¶30} We hold that the trial court did not abuse its discretion when it forbade Oates from "attend[ing] any Kenton City Schools athletic events" as a condition of his community control.

{¶31} Oates' second assignment of error is, therefore, overruled.

{¶32} Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

***Judgment Affirmed***

**ROGERS and SHAW, J.J., concur.**