[Cite as *State v. Westrick*, 196 Ohio App.3d 141, 2011-Ohio-1169.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## PUTNAM COUNTY

THE STATE OF OHIO,

     APPELLEE,                               CASE NO. 12-10-12

     v.

WESTRICK,                                   O P I N I O N

     APPELLANT.

Appeal from Putnam County Common Pleas Court
Trial Court No. 2008 CR 00050

Judgment Affirmed

Date of Decision: March 14, 2011

APPEARANCES:

    *Gary L. Lammers,* for appellee.

    *Andrew R. Bucher,* for appellant.

SHAW, Judge.

{¶1} Defendant-appellant, Nicole K. Westrick, appeals the August 30, 2010 judgment of the Common Pleas Court of Putnam County, Ohio, finding that she had violated the terms of her judicial release, revoking her judicial release, and reimposing her sentence of 12 months.

{¶2} The facts relevant to this appeal are as follows. On September 12, 2008, Westrick was indicted on three counts of deception to obtain a dangerous drug in violation of R.C. 2925.22(A), each a felony of the fifth degree. Initially, Westrick pleaded not guilty to each offense, but on January 28, 2009, she withdrew her previously tendered plea of not guilty to Count Three of the indictment and entered a plea of guilty to that offense. In exchange for Westrick's plea of guilty, the state agreed to dismiss the first two counts. A presentence investigation was ordered, and a sentencing hearing was held on March 31, 2009.

{¶3} Westrick was placed on three years of community control under the general terms and provisions of the Adult Parole Authority. Among the special sanctions placed upon her were that she serve 30 days in jail and that she "have only one (1) medical care provider and one (1) pharmacy and shall disclose the same to her supervising officer." The trial court also advised Westrick that if she violated the terms of her community control, she would receive a sentence of 12 months in prison.

{¶4} In November 2009, the state filed two separate motions to revoke Westrick's community control, listing numerous violations of her supervision. A hearing was held on these motions on November 19, 2009, and Westrick admitted to violating her community control as alleged by the state, including, inter alia, failing to use one medical provider and disclosing that provider to her supervising officer on three separate occasions and to using a pharmacy that was not disclosed to her supervising officer. As a result, the trial court sentenced her to 12 months in prison.

{¶5} The trial court granted Westrick judicial release on February 17, 2010, and placed her under community-control sanctions once again under the general terms and provisions of the Adult Parole Authority. Among the special sanctions placed upon her this time were that she successfully complete the W.O.R.T.H. Center program and that she "have only one (1) medical care provider and one (1) pharmacy and shall disclose the same to her supervising officer."

{¶6} On July 23, 2010, the state filed a motion to revoke Westrick's judicial release and to reimpose the remainder of her prison sentence. In this motion, the state alleged that Westrick had failed to use only one pharmacy and failed to inform her supervising officer that she was using a pharmacy other than the one she had previously disclosed to her supervising officer. After various delays, a hearing on the state's motion to revoke Westrick's judicial release was conducted on August 24, 2010.

{¶7} At the hearing, the state presented the testimony of Westrick's current supervising officer, Duane Weiging, and her former supervising officer, Jim Szeremeta. Both officers testified that they each had explained the conditions of supervision to Westrick, including that she was to use only one pharmacy and was to advise them of which one she was using. Weiging also testified that Westrick had signed a document containing these terms and conditions of supervision and indicated that she had no questions about using only one pharmacy. When Weiging discussed the conditions of Westrick's supervision with her, she informed him that she would be using the Walmart pharmacy located on Cable Road in Lima, Ohio, which was also the pharmacy on record for Westrick when she was under supervision with Szeremeta.

{¶8} Szeremeta testified that in July 2010, Weiging was on vacation when he received a phone call from the Walmart on Cable Road regarding Westrick's attempt to have a prescription for a Schedule II controlled substance refilled earlier than the date it was due to be refilled, which request the pharmacy denied. Szeremeta was also informed that Westrick later attempted to have her prescription transferred to a Walmart in Ottawa, Ohio, which was refused, and that she eventually transferred her prescription to a Rite Aid on Shawnee Road in Lima, Ohio. Szeremeta went to Rite Aid and learned that the pharmacy had filled the prescription for Westrick the day before but that she had also submitted two other prescriptions to be filled. Two days later, Westrick called Rite Aid to see if her prescriptions were ready, and the pharmacist contacted Szeremeta. He then

contacted the local police, who aided him in arresting Westrick when she picked up her prescriptions from Rite Aid. Westrick told him that she had changed to the Rite Aid pharmacy because it had a drive-through.

{¶9} Westrick then presented the testimony of Amy Mankin, a Rite Aid pharmacist, who testified that the transfer of Westrick's prescription from Walmart to Rite Aid was done in accordance with law. She also testified that Westrick's transferred prescription was filled by Rite Aid and picked up by Westrick on Monday and that Rite Aid filled two other prescriptions for Westrick the next day, which Westrick picked up two days later. On cross-examination, Mankin testified that Westrick had told her that she needed to transfer the prescription and fill it because she was going on vacation.

{¶10} The trial court found that Westrick had violated the terms of her judicial release and reimposed Westrick's 12-month prison sentence. This appeal followed, and Westrick now asserts four assignments of error.

Assignment of Error I

The trial court erred in failing to enter a judgment of acquittal pursuant to Crim.R. 29.

Assignment of Error II

The trial court erred in finding that appellant had violated community control, the same being an abuse of discretion.

Assignment of Error III

The trial court erred in finding that appellant had violated a term of community control which was overbroad and lacked a mechanism through which compliance could be assured.

Assignment of Error IV

The trial court erred when it allowed hearsay evidence to be presented that constituted the only evidence relied upon to make the crucial determination of the community control violation, the same compromised appellant's right to confrontation.

{¶11} For ease of discussion, we elect to address the assignments of error out of order and to address the second and fourth assignments of error, which are interrelated, together.

*First Assignment of Error*

{¶12} In her first assignment of error, Westrick maintains that the trial court erred in failing to grant her Crim.R. 29 motion for acquittal at the conclusion of the state's evidence. However, Westrick acknowledges that this was a hearing to determine whether she had violated the terms of her judicial release and that a revocation hearing is not a criminal trial. See *State v. Ryan*, 3d Dist. No. 14-06-55, 2007-Ohio-4743.

{¶13} Crim.R. 29 states: "The court on motion of a defendant * * * after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more *offenses charged in the indictment, information, or complaint*, if the evidence is insufficient to sustain a *conviction* of such offense or offenses." (Emphasis added.) By its very language, Crim.R. 29 applies to trials for criminal offenses. A judicial-release-revocation hearing is not a criminal trial and does not result in a *conviction*. In fact, a violation of community-control sanctions does not necessarily involve criminal activity, such as the violation at

issue in the case sub judice. Thus, Crim.R. 29 was not applicable at Westrick's hearing, and the trial court did not err in denying this motion. Accordingly, the first assignment of error is overruled.

### Third Assignment of Error

{¶14} In her third assignment of error, Westrick maintains that the trial court erred in finding that she had violated a condition of her judicial release that was overbroad and lacking a mechanism through which compliance could be assured. More specifically, she asserts that the condition that she have one pharmacy and disclose that pharmacy to her supervising officer was vague and that there was no mechanism to enforce it because the testimony of Szeremeta demonstrated that there was not a "set way" to report a change of circumstances to a supervising officer.

{¶15} A trial court has broad discretion in imposing community-control sanctions. *State v. Talty*, 103 Ohio St.3d 177, 2004-Ohio-4888, 814 N.E.2d 1201, ¶ 10. Nevertheless, a trial "court's discretion in imposing [probationary conditions] is not limitless." *State v. Jones* (1990), 49 Ohio St.3d 51, 52, 550 N.E.2d 469. Rather, "probation conditions must be reasonably related to the statutory ends of probation and must not be overbroad."[1] *Talty* at ¶ 16, citing

---

[1] The court in *Talty* recognized that community control is the functional equivalent of probation and that the goals of probation, previously codified in R.C. 2951.02(C), were equally applicable to community control, although they were no longer explicitly stated in the Revised Code. Although Westrick's community-control sanctions and conditions were imposed as a part of her *judicial release* and she was not on *community control*, we believe that the goals of community control apply equally to judicial release, which requires that a trial court impose "appropriate community control sanction[s], under appropriate conditions." R.C. 2929.20(K).

*Jones* (relying upon a "commonsense" understanding of the conditions of supervision to determine whether a condition is overbroad and holding that "[c]ourts imposing conditions on probation are not expected to define with specificity the probationer's behavior in all possible circumstances. Rather, the conditions must be clear enough to notify the probationer of the conduct expected of him"). The goals of community control are "rehabilitation, administering justice, and ensuring good behavior." *Talty* at ¶ 16, citing *Jones*. Thus, "courts should consider whether the condition (1) is reasonably related to rehabilitating the offender, (2) has some relationship to the crime of which the offender was convicted, and (3) relates to conduct which is criminal or reasonably related to future criminality and serves the statutory ends of probation." *Jones* at 52.

{¶16} Here, Westrick was convicted of deception to obtain dangerous drugs. This charge stemmed from an investigation that revealed that in the course of just over two years, Westrick obtained prescriptions for various pain medications from 62 different prescribers without informing any of them that she was also being treated by other physicians who were also providing her with prescriptions for pain medications. She then filled these prescriptions using 37 different pharmacies. The investigation further revealed that Westrick was addicted to these medications.

{¶17} The conditions at issue in this appeal were that Westrick have only one pharmacy and that she had to disclose this pharmacy to her supervising officer. These conditions were placed upon her when she was initially sentenced

-8-

to community control in March 2009. In November 2009, she admitted that she had used a pharmacy that she did not disclose to her supervising officer, as well as a number of other violations of community control. Consequently, her supervision was revoked, and she was sent to prison. Westrick was granted judicial release the following February and ordered to complete the W.O.R.T.H. program, to undergo drug treatment, and to adhere to the same conditions now at issue.

{¶18} Clearly, the trial court was concerned about Westrick's abuse of drugs and the efforts she had made in order to obtain a large quantity of prescription medication, which led to her conviction for deception to obtain dangerous drugs. Using 37 different pharmacies enabled her to obtain a large amount of prescription pain medication without detection for over two years. Thus, requiring that she use only one pharmacy and that she disclose this pharmacy to her supervising officer were conditions reasonably related to her rehabilitation, to her crime, and to her potential to engage in future criminal behavior.

{¶19} Further, these conditions were not vague, overbroad, or lacking a mechanism to ensure compliance. These conditions were capable of being readily understood when applying common sense to them, an approach encouraged by the Ohio Supreme Court in *Jones*. A commonsense reading of these conditions provided Westrick with fair notice of what conduct was prohibited and what was required. In no uncertain terms, Westrick was to use one pharmacy, and she was to report the name of this pharmacy to her supervising officer. In addition, she

was to use only one medical-care provider and to report her legal status and medical status to that provider, the pharmacist, and the supervising officer. The patently obvious purpose of all of these conditions was to allow Westrick access to medical care and prescription medications if necessary but to do so with full disclosure to anyone treating her and with a supervising officer who could monitor the situation to detect whether Westrick was engaging in the same pattern of behavior that ultimately resulted in her conviction. Further, these conditions were not new to Westrick. In fact, her community control was revoked once before due, in part, to her use of a pharmacy that she had not disclosed to her supervising officer. Therefore, her third assignment of error is overruled.

*Second and Fourth Assignments of Error*

**{¶20}** Westrick asserts in her second assignment of error that the trial court erred in finding that there was substantial evidence that she had violated the conditions of her judicial release. In her fourth assignment of error, Westrick contends that the trial court erred in permitting and relying solely upon inadmissible hearsay evidence at the judicial release revocation hearing as to what Szeremeta had been told by Jim Kempf, Tisha Bater, Jacob Bowersock, George Wolfe, and Amy Mankin in order to find that she had violated the condition that she use only one pharmacy.

**{¶21}** As previously noted, a judicial-release-revocation hearing is not a criminal trial, so the state is not required to establish a violation of the terms of judicial release beyond a reasonable doubt. *Ryan*, 2007-Ohio-4743, at ¶ 7, citing

-10-

*State v. Hylton* (1991), 75 Ohio App.3d 778, 600 N.E.2d 821. Instead, the state must show "substantial" proof that the offender violated the terms of his or her judicial release. See *State v. Alexander*, 3d Dist. No. 14-07-45, 2008-Ohio-1485, ¶ 8, citing *Ryan*.

**{¶22}** A trial court's decision finding a violation of judicial release will not be disturbed on appeal absent an abuse of discretion. See *Alexander* at ¶ 8, citing *Ryan*. An abuse of discretion constitutes more than an error of law or judgment and implies that the trial court acted unreasonably, arbitrarily, or unconscionably. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 450 N.E.2d 1140. When applying the abuse-of-discretion standard, a reviewing court may not simply substitute its judgment for that of the trial court. Id.

**{¶23}** Additionally, although a revocation proceeding must comport with the requirements of due process, it is not a criminal proceeding. *Gagnon v. Scarpelli* (1973), 411 U.S. 778, 782. The minimum due process requirements for revocation hearings include that the offender have "the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation)." *Ryan*, 2007-Ohio-4743, at ¶ 8, citing *State v. Miller* (1975), 42 Ohio St.2d 102, 104, 326 N.E.2d 259, quoting *Morrissey v. Brewer* (1972), 408 U.S. 471, 489.

**{¶24}** Furthermore, revocation hearings are not subject to the rules of evidence, thus allowing for the admission of hearsay evidence. See *State v. Patierno*, 3d Dist. No. 4-08-08, 2009-Ohio-410, ¶ 16; Evid.R. 101(C)(3). "The

-11-

rationale for the exception is that, since a * * * revocation hearing is an informal proceeding, not a criminal trial, the trier of fact should be able to consider any reliable and relevant evidence to determine whether the [defendant] has violated the conditions of his [supervision]." *Columbus v. Bickel* (1991), 77 Ohio App.3d 26, 36, 601 N.E.2d 61, citing *Miller*, 42 Ohio St.2d at 106, 326 N.E.2d 259. However, hearsay evidence at a revocation hearing can compromise the offender's due process right to confront adverse witnesses. *Ryan* at ¶ 9, citing *Bickel* at 37. "The introduction of hearsay evidence into a revocation hearing is reversible error when that evidence is the only evidence presented and is crucial to a determination of a probation violation." *Ryan*, 2007 Ohio-4743, ¶ 9, citing *State v. Ohly*, 166 Ohio App.3d 808, 816, 853 N.E.2d 675.[2]

{¶25} In the case sub judice, Weiging testified that he had been assigned to supervise Westrick when she was granted judicial release and released from the W.O.R.T.H. Center. On June 29, 2010, he went to her home for a home visit and scheduled an appointment for her to come to his office on July 14, 2010. Westrick came to Weiging's office as directed, and at that time, Weiging reviewed the terms and conditions of supervision with Westrick, which were the same terms and conditions she was previously under, to "make sure we're on the same page." She also signed these terms and conditions after they had reviewed them together. Weiging specifically discussed the condition that she was to use one pharmacy and

---

[2] Although this was a hearing to determine whether Westrick had violated the conditions of her judicial release rather than of community control or probation, this court has previously applied the same principles applicable to community-control-revocation hearings to judicial-release-revocation hearings. See *State v. Osborn*, 3d Dist. No. 9-05-35, 2006-Ohio-1890.

to disclose the name of the pharmacy to him. Westrick then informed him that she would be using the pharmacy at Walmart on Cable Road in Lima. She also did not have any questions about this condition when Weiging asked if she had any questions about it. After July 14, 2010, Weiging did not have any further contact with Westrick.

{¶26} Szeremeta then testified that he had been Westrick's supervising officer when she was initially placed on community control in March 2009. He explained to the court that when Westrick was first placed under his supervision, she informed him that she would be using the Cable Road Walmart pharmacy. Consequently, he provided that pharmacy with a copy of Westrick's judgment entry of conviction and his business card and requested that the pharmacy contact him if there was any type of irregularity with her obtaining prescriptions. On July 20, 2010, he received a voice-mail message from Jim Kempf, a pharmacist at the Cable Road Walmart. He testified that Kempf had left the message the previous day and asked that Szeremeta return his call to discuss Westrick coming into the pharmacy to request that a prescription be refilled earlier than it was due.

{¶27} Szeremeta testified that when he called the pharmacy, Kempf was not working and he spoke to another pharmacist, Tisha Bater, instead. Bater informed him that Westrick came to the pharmacy and wanted to refill her prescription for Ambien, a Schedule II controlled substance, two or three days earlier than prescribed, but the pharmacy refused to do so. Shortly after Westrick left the premises, the pharmacy at the Walmart located in Ottawa, Ohio, contacted

the Cable Road Walmart and told the pharmacist that Westrick wanted her prescription transferred to its location. However, for reasons unknown to Szeremeta, the two pharmacies did not transfer the prescription. Bater also told Szeremeta that within a few hours, the Cable Road Walmart was contacted by the Rite-Aid on Shawnee Road in Lima and asked to transfer Westrick's prescription to its location. Walmart then transferred the prescription to Rite Aid.

{¶28} Szeremeta testified that he had gone to Rite Aid and spoken with Jacob Bowersock, an intern. As he was speaking with Bowersock, Amy Mankin, a pharmacist, began speaking with him. While at Rite Aid, Szeremeta provided them with a copy of the judgment entry of conviction for Westrick and a release form signed by her. He also learned that Westrick had two prescriptions to be filled at Rite Aid. Two days later, Szeremeta was contacted by George Wolfe, a pharmacist at Rite Aid, who informed him that Westrick had called the pharmacy that morning to ask if her prescriptions were ready, and they were.

{¶29} Szeremeta contacted the local police department for assistance. When Westrick arrived at Rite Aid and picked up her two prescriptions, her vehicle was stopped by the police and she was placed under arrest by Szeremeta. When Szeremeta told her that he was arresting her because of her failure to inform her supervising officer that she was using Rite Aid's pharmacy, she stated that the reason she changed was because Rite Aid had a drive-through and Walmart did not. Szeremeta further testified that Westrick had not notified anyone at the Adult Parole Authority, including Weiging, that she was changing pharmacies.

**{¶30}** Mankin also testified that Westrick had her prescription for Ambien transferred to the Rite Aid from the Cable Road Walmart. Westrick told Mankin that the reason she needed the transfer and to refill the prescription at Rite Aid was because she was going on vacation. The prescription was refilled on Monday, July 19, 2010. According to Mankin, Westrick had two additional prescriptions filled by Rite Aid the next day, but she did not pick up those prescriptions until two days later.

**{¶31}** Given this evidence, we do not find that the trial court abused its discretion in finding that Westrick had violated her conditions of judicial release, namely, that she had used more than one pharmacy and that she had failed to disclose that she was using the Rite Aid pharmacy to her supervising officer. Weiging's testimony, which did not include hearsay, showed that on July 14, 2010, Westrick had told him that she would be using the Cable Road Walmart. Mankin's testimony, exclusive of any hearsay, showed that five days later, Westrick had used Rite Aid to fill the prescription she had transferred from the Cable Road Walmart and that she had used Rite Aid again to fill two additional prescriptions. Szeremeta's testimony, absent the hearsay evidence included in his testimony, demonstrated that he had arrested Westrick immediately after she had used Rite Aid to fill two other prescriptions on July 22, 2010, and that she admitted to him that she used Rite Aid. Further, both Weiging's and Szeremeta's testimony, exclusive of any hearsay, established that Westrick had not notified her

-15-

supervising officer or anyone at the Adult Parole Authority at any point in time before her arrest that she was using the Rite-Aid pharmacy.

{¶32} This evidence conclusively established that Westrick had used more than one pharmacy and that she had not disclosed the fact that she was using Rite Aid to her supervising officer. Thus, the hearsay evidence that was admitted was not the only evidence presented to determine whether Westrick violated her conditions of judicial release. The hearsay evidence as to what Szeremeta was told by Kempf, Bater, Bowersock, Wolfe, and Mankin was relevant to this determination and to the court's decision as to the consequence of Westrick's violations, because it more fully explained the circumstances surrounding Westrick's transfer, including the timing of her different attempts to have her prescription refilled, the number of attempts, her attempt to obtain the refill before it was due, and her differing reasons for the transfer. However, it was not *crucial* to the determination of whether she violated a term of her judicial release.

{¶33} Despite all of this evidence, Westrick asserts that by transferring the one prescription to Rite Aid from Walmart, she was using only one pharmacy, which was in compliance with this condition of judicial release. We disagree.

{¶34} The fact that she was attempting to obtain a *refill* of a prescription and then had *this* prescription transferred, as well as the fact that she told Weiging that the Cable Road Walmart was the pharmacy she was using only a few days before transferring her prescription from there, demonstrates that she was using the Cable Road Walmart while on judicial release. She then chose to use a

different pharmacy when she transferred the prescription to Rite Aid. The condition at issue was not that she use only one pharmacy *at a time* but that she use only one pharmacy while under judicial release. The undisputed evidence showed that Westrick had used two different pharmacies while under a community-control sanction that she use only one.

{¶35} Further, the undisputed evidence showed that Westrick had not reported her use of Rite-Aid to her supervising officer. Although she argues that the testimony of Szeremeta that some offenders wait until their next scheduled meeting with their supervising officers to update them on any changes in their lives established that it was acceptable for her to inform Weiging of her use of Rite Aid's pharmacy at her next scheduled meeting, there was no evidence about the kinds of changes that are sometimes reported at the next meeting, the circumstances under which that might occur, and the conditions of community control and/or judicial release for those offenders. Moreover, there was no evidence that Westrick intended to inform Weiging of this change at their next scheduled meeting or that she even thought that she could wait to inform him until this time. Regardless, Westrick had ample time to notify Weiging of this change and she chose, for whatever reason, not to do so. Therefore, she also violated this condition.

{¶36} For all of these reasons, the second and fourth assignments of error are overruled as well, and the judgment of the Common Pleas Court of Putnam County, Ohio, is affirmed.

Judgment affirmed.

ROGERS, P.J., and PRESTON, J., concur.