[Cite as *State v. Sanchez*, 2021-Ohio-1585.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | No. 109673 |
| v. | : | |
| JUAN A. SANCHEZ, | : | |
| Defendant-Appellant. | : | |

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** May 6, 2021

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-18-625480-A

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Theodore Parran, III, Assistant Prosecuting Attorney, *for appellee.*

Cullen Sweeney, Cuyahoga County Public Defender, and Erika B. Cunliffe, Assistant Public Defender, *for appellant.*

MARY J. BOYLE, A.J.:

{¶ 1} Defendant-appellant, Juan Sanchez, appeals from the trial court's judgment finding that he violated the conditions of his judicial release and

reimposing the remainder of his prison sentence. He raises one assignment of error for our review:

> The trial court violated Mr. Sanchez's state and federal constitutional rights to due process when it revoked his judicial release based on his having violated a condition of which Sanchez had not been properly notified.

{¶ 2} We find that we cannot reach the merits of Sanchez's due process argument because he admitted to the violation, and thus, we affirm the trial court's judgment.

## I. Procedural History and Factual Background

{¶ 3} The charges in this case stem from January 2018 when police stopped Sanchez for littering out of his vehicle window and found a loaded handgun, "a few grams" of cocaine, marijuana, and a scale in his coat. At the time, Sanchez was on community control supervision for drug possession in Cuyahoga C.P. No. CR-14-587643 from 2014, and he had already violated the terms of his community control sanctions three times.

{¶ 4} In February 2018, Sanchez was indicted in the case underlying this appeal, Cuyahoga C.P. No. CR-18-625480, for three counts: Count 1, carrying a concealed weapon in violation of R.C. 2923.12(A)(2), a fourth-degree felony, with a forfeiture specification; Count 2, drug possession in violation of R.C. 2925.11(A), a fifth-degree felony, with a one-year firearm specification; and Count 3, having a weapon while under disability in violation of R.C. 2923.13(A)(3), a third-degree felony, with a forfeiture specification.

{¶ 5} In March 2018, Sanchez agreed to enter a negotiated plea. At the plea hearing, the state offered to nolle Count 1, carrying a concealed weapon, and the firearm specification on Count 2, drug possession. In exchange, Sanchez would plead guilty to amended Count 2, drug possession with no specification, and Count 3, having a weapon while under disability, with the forfeiture specification. Sanchez accepted the offer, and the trial court found that he entered his guilty plea knowingly, intelligently, and voluntarily with a full understanding of the rights he was waiving. The trial court referred him for a presentence investigation report.

{¶ 6} At the sentencing hearing in April 2018, the trial court outlined Sanchez's extensive criminal history, including, among other offenses, drug possession, operating a vehicle while intoxicated, disorderly conduct, drug possession specifically in CR-14-587643, and the three community control violations in that case. The trial court sentenced Sanchez to 30 months in prison: 12 months for Count 2, drug possession, to run concurrently with 30 months for Count 3, having a weapon while under disability. The trial court imposed court costs, told Sanchez that "it is my sincere hope that you are put under supervision by the parole board when you get out for postrelease control," and explained to Sanchez the consequences if he were to violate the requirements of postrelease control. The sentencing judgment entry states that "post release control is part of this prison sentence for up to 3 years discretionary" and that Sanchez would forfeit the gun to the state. In the same hearing, the trial court also found Sanchez to be in violation

of his community control sanctions in CR-14-587643 and terminated the community control sanctions in that case.

{¶ 7} In May 2019, Sanchez filed a motion for judicial release pursuant to R.C. 2929.20. In June 2019, the trial court granted Sanchez's motion and placed him on community control sanctions for 12 months. At the judicial release hearing, the trial court advised Sanchez of the following conditions of community control: "You will be subject to regular alcohol and drug testing. You will be forbidden from using any alcohol or illicit drugs. You'll be ordered to maintain employment or full-time schooling." The judgment entry states: "12 months community control sanctions. Regular testing, no alcohol or drugs. Maintain employment or full-time schooling."

{¶ 8} In February 2020, Sanchez's probation officer sent a status report to the trial court to alert the court that Sanchez had tested positive for marijuana. In response to the status report, on March 6, 2020, the trial court assigned Sanchez counsel and set a "community control sanctions violation hearing" for March 20, 2020. However, two docket entries on March 9, 2020, reflect that the March 20 hearing "was set in error," Sanchez retained the same counsel who represented him earlier in the case, and the trial court held a "hearing on alleged probation violation" on March 9, 2020.

{¶ 9} At the hearing, Sanchez's probation officer told the court that she sent the status report because Sanchez provided a medical marijuana card for seizures, and she explained that some judges have allowed medical marijuana use during

community control supervision.  The trial court responded, "not in this room," and expressed his disdain for the medical marijuana industry.  The trial court asked about the probation department's standard terms regarding drug use, and the probation officer clarified that the probation department has a "no tolerance" policy and that "there should be no substance use whatsoever."

{¶ 10} The trial court asked Sanchez's counsel what he would like to say on Sanchez's behalf, and defense counsel responded, "Well, Judge, he did it."  Sanchez's counsel offered the court a copy of the medical marijuana card and a statement from Sanchez's doctor "saying it's okay."  He explained that he told Sanchez, "when the judge says no alcohol, no drugs, that's exactly what this judge, this court means.  He understands that now."  Defense counsel said that Sanchez is "willing to accept whatever punishment this court deems appropriate."

{¶ 11} Sanchez told the court that his decision to use medical marijuana was "incompetent."  He explained that he thought "it was going to be okay" because he had a medical marijuana card and a letter from his physician, but he "wasn't really thinking things through," and he did not follow "the absolute underlying word" that the trial court told him.  He said he "made a mistake."

{¶ 12} The trial court asked Sanchez about his seizures, and Sanchez explained that he has had seizures in his sleep since he was four years old.  He told the court that the seizures are "dormant" and that he has not had one since 2013, although he gets headaches and migraines.  He explained that his doctor said that certain things like lights and headaches could retrigger his dormant seizures.

Sanchez also said that he was diagnosed with epilepsy when he was four years old and that he was diagnosed with post-traumatic stress disorder ("PTSD") in 2015. He told the court that he was prescribed Ativan for his PTSD, but his probation officer told him it was prohibited, so he had stopped taking it. Sanchez could not remember the name of the physician who treated his epilepsy or the name of the medication that the physician had prescribed, but he knew that he had stopped taking it. Sanchez clarified that the medical marijuana was to treat his epilepsy and PTSD, but he explained that he could see a psychiatrist for his PTSD and that he could manage his epilepsy with melatonin.

{¶ 13} The trial court again went through Sanchez's extensive criminal history, his drug offenses, and his community control violations in CR-14-587643. The trial court told Sanchez that it did not believe that he sought a medical marijuana card to treat his epilepsy. The trial court found that Sanchez had violated the terms of his community control sanctions and ordered that he serve the remainder of his 30-month prison sentence.

{¶ 14} It is from this judgment that Sanchez timely appealed. He filed in the trial court and in this court a motion for bond and to suspend his sentence pending appeal, and both courts denied his motion.

## II. Law and Analysis

{¶ 15} In his sole assignment of error, Sanchez argues that the trial court violated his due process rights when it revoked his judicial release and reimposed

his prison sentence. He contends that the trial court failed to properly notify him that he could not use medical marijuana.

{¶ 16} Pursuant to R.C. 2929.20(K), if a trial court grants judicial release to an eligible offender, the court "shall place the eligible offender under an appropriate community control sanction, under appropriate conditions, and under the supervision of the department of probation serving the court and shall reserve the right to reimpose the sentence that it reduced if the offender violates the sanction." Further, "[a] judicial release revocation hearing is not a criminal trial and does not result in a conviction." *State v. Westrick*, 196 Ohio App.3d 141, 2011-Ohio-1169, 962 N.E.2d 818, ¶ 13 (3d Dist.). Therefore, the state is not required to prove a judicial release violation "beyond a reasonable doubt"; instead, the state must show "substantial proof that the offender violated the terms of his or her judicial release." *Id.* at ¶ 21. "A trial court's decision finding a violation of judicial release will not be disturbed on appeal absent an abuse of discretion." *Id.* at ¶ 22, citing *State v. Alexander*, 3d Dist. Union No. 14-07-45, 2008-Ohio-1485, ¶ 8. An abuse of discretion connotes that the trial court's attitude was unreasonable, arbitrary, or unconscionable. *Ruwe v. Bd. of Twp. Trustees*, 29 Ohio St.3d 59, 61, 505 N.E.2d 957 (1987).

{¶ 17} Sanchez argues that the trial court violated his due process rights because it failed to notify him that he would be punished if he consumed medical marijuana. He maintains that the trial court informed him that he could not use "illicit drugs" and that even his probation officer was not certain whether medical

marijuana was prohibited. The parties briefed detailed arguments regarding the trial court's discretion to prohibit medical marijuana and the adequacy of the trial court's inquiry into Sanchez's medical marijuana use. However, we cannot reach the merits of Sanchez's due process argument because Sanchez conceded at the March 2020 violation hearing that his medical marijuana use violated his community control conditions.

{¶ 18} Even though the March 2020 hearing was set in response to a status report, Sanchez knew, or reasonably should have known, that the hearing was for a violation of his community control sanctions that could result in the revocation of his judicial release. The trial court's docket called the hearing a "community control sanctions violation hearing" and a "hearing on alleged probation violation." Sanchez retained counsel for the hearing. The trial court opened the hearing by stating, "We're here today for a probation violation hearing." During the hearing, Sanchez admitted to the violation. Defense counsel said, "Well, judge, he did it." Defense counsel explained that he told Sanchez "no drugs" meant just that, and Sanchez was "willing to accept" the trial court's punishment. Sanchez himself conceded that when he used medical marijuana, he did not follow the "absolute underlying word" of his community control conditions, and he didn't think "things through." Sanchez explained that using medical marijuana was a "mistake" and an "incompetent" decision.

{¶ 19} Sanchez discussed his medical marijuana card, physician's letter, and medical conditions to mitigate his punishment. He did not argue that medical

marijuana was or should have been permissible under the conditions of his community control, and he did not contend that he lacked notice that medical marijuana use would be a violation. Instead, he admitted to the violation and sought mitigation.

{¶ 20} We find that the trial court did not err in finding substantial proof that Sanchez had violated the conditions of his community control. Although the trial court had told Sanchez at the judicial release hearing that he could not use "illicit drugs," the judgment entry stated, "no alcohol or drugs," and the probation department's standard terms include a "no tolerance" policy regarding drug use. During the hearing, Sanchez's probation officer explained that Sanchez tested positive for marijuana, and Sanchez admitted that he used medical marijuana in violation of his community control sanctions. The admissions were substantial proof of the violation. *See, e.g., State v. Kinser*, 5th Dist. Licking No. 2020 CA 00032, 2020-Ohio-5308, ¶ 24 (appellant's admission of the violations presented the trial court with "substantial proof and competent credible evidence" that appellant had violated her community control sanctions).

{¶ 21} Accordingly, we find that the trial court did not abuse its discretion in finding Sanchez in violation of his conditions of community control, revoking his judicial release, and reimposing his prison sentence. We therefore overrule Sanchez's sole assignment of error.

{¶ 22} Judgment affirmed.

It is ordered that appellee recover from appellant the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


_____
MARY J. BOYLE, ADMINISTRATIVE JUDGE

EILEEN A. GALLAGHER, J., and
LISA B. FORBES, J., CONCUR