[Cite as *State v. Corder*, 2021-Ohio-2880.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
HOCKING COUNTY

|  |  |  |
|---|---|---|
| State of Ohio, | : | Case No. 20CA10 |
| Plaintiff-Appellee, | : | |
| v. | : | <u>DECISION AND</u> <u>JUDGMENT ENTRY</u> |
| Andrew Corder, | : | |
| Defendant-Appellant. | : | **RELEASED 8/18/2021** |

_____
<u>APPEARANCES</u>:

Kathyrn Cornelius-Blume, Dagger, Johnston, Miller, Ogilvie & Hampson, LLP, Lancaster, Ohio, for appellant.

Ryan Stickel, Hocking County Prosecutor's Office, Logan, Ohio, for appellee.
_____
Hess, J.

{¶1} Andrew Corder appeals from a judgment of the Hocking County Court of Common Pleas revoking his judicial release and reimposing his original prison sentence with credit for time served. Corder contends that the state failed to submit competent, credible evidence that he violated the terms of his "probation." He also contends, and the state concedes, that the trial court erred when it failed to advise him about post-release control at his "probation violation sentencing hearing." For the reasons that follow, we reject these contentions and affirm the trial court's judgment.

## I. FACTS AND PROCEDURAL HISTORY

{¶2} In January 2016, the Hocking County grand jury indicted Corder on the following charges with forfeiture specifications: (1) Count I, unlawful sexual conduct with

a minor in violation of R.C. 2907.04(A), a third-degree felony; (2) Count II, unlawful sexual conduct with a minor in violation of R.C. 2907.04(A), a third-degree felony; (3) Count III, importuning in violation of R.C. 2907.07(B)(1), a fifth-degree felony; (4) Count IV, contributing to the unruliness of or delinquency of a child in violation of R.C. 2919.24(A) (now (B)(1)), a first-degree misdemeanor; and (5) Count V, contributing to the unruliness of or delinquency of a child in violation of R.C. 2919.24(A) (now (B)(1)), a first-degree misdemeanor. Corder ultimately pleaded guilty as charged.

{¶3} In July 2016, the court issued an entry sentencing him to a prison term of 24 months on Count I, 24 months on Count II, 11 months on Count III, 180 days on Count IV, and 180 days on Count V. The court ordered the sentences on "Count I, Count II and Count III to be served consecutive to each other, with the sentences ordered on Count IV and Count V to merge for sentencing for a total term of 4 years 11 months." The entry states that the court "notified the defendant that post release control is mandatory for FIVE years, as well as the consequences of violating conditions of post release control * * *."

{¶4} In May 2019, the court issued an entry that granted Corder judicial release under R.C. 2929.20. The court placed him on five years of community control with conditions, including that he successfully complete an appropriate community based correctional facility (CBCF) program and inpatient treatment. The court stated:

> Defendant is placed on a Community Control Sanction, and if the conditions of the sanction are violated, * * * the court may (1) lengthen the term of the community control sanction (2) impose a more restrictive community control sanction or (3) impose a prison term on the offender. The reserved term is: 4 years, 11 months (less credit). This Court reserves the right to re-impose the sentence.

{¶5}  In December 2019, the state moved the court to revoke Corder's "supervision" and impose his previously suspended sentence, in part because he was "unsuccessfully terminated" from the Franklin County CBCF.  In January 2020, the court issued an entry finding he had violated "the terms and conditions of his community control," ordering that he "remain under community control sanctions and conditions as originally imposed by the Court" in May 2019, and ordering that he "enter and successfully complete the full 6-month STAR program."  The entry states that if he "violates the rules of community control," the court can "(1) lengthen the term of the community control sanction (2) impose a more restrictive community control sanctions [sic] or (3) impose the balance of his reserved prison term of 4 years and 11 months minus jail time credit."  The entry also states that the court has "notified the defendant that post release control is mandatory in this case for a period of 5 years, as well as the consequences of violating conditions of post release control * * *."

{¶6}  In August 2020, the state moved the court to revoke Corder's "supervision" and impose his previously suspended sentence because he was unsuccessfully terminated from STAR.  In September 2020, the court conducted a hearing at which the state introduced into evidence a STAR discharge statement which indicates Corder entered STAR on January 21, 2020, and was unsuccessfully discharged on July 7, 2020, i.e., 11 days before he would have completed the program.  The statement indicates he had five major concern slips (one for "out of area," one for "non-homework compliance," two for "disrespectful behavior," and one for "threats of violence") and 44 minor concern slips.  The statement provides that "[s]taff made several attempts to address these

antisocial behaviors through various levels of interventions," but "[d]ue to continued rule infractions, it was determined that Mr. Corder is not amenable to treatment at this time."

**{¶7}** Cindy Hacker, an employee at STAR Community Justice Center, testified that STAR is "a community behavior therapy facility where we challenge residents' thoughts and behaviors and try to teach them a new way of living so they don't go back out into the community and have violations again * * *." STAR residents receive a handbook of program rules and can receive "major concern" and "minor concern" slips for violations. Major violations "have criminal behavior * * * or criminal intent behind them," and minor violations relate more to forgetfulness. Hacker testified that "a concern slip is not grievable" but the "corrective action that is attached to it" is. She could not give details about three of Corder's major violations or his 44 minor violations. She testified that he received a slip for disrespectful behavior because he flipped off another resident in violation of STAR's rule against profanity. When asked if it is "a major violation whenever someone uses profanity," Hacker testified that "it can be, absolutely" and that "[w]e typically hold everybody accountable for if they use profanity or if they flip someone off." Hacker testified that Corder received a slip for threats of violence because he told another resident that he did not know what Corder was like in prison and that Corder "would put a lock in a sock and find him." Corder claimed the resident had called him a name. Hacker testified that Corder had more interventions than the average resident, and that during them, he acknowledged his violations but tried to justify his behavior. She was not aware of Corder failing any random drug tests given to residents and testified that he attended all STAR classes prior to his discharge. She did not know whether he "put in a

grievance" to challenge his discharge but knew he met with several administrative staff members prior to his discharge.

**{¶8}** Diane Allwine, Corder's parole officer, testified that she had two interventions with Corder while he was in STAR, which is unusual because she typically has "about one with a CBCF." She believed he understood that he had to successfully complete the STAR program as a condition of his community control. Allwine testified that during their conversations, Corder "seemed compliant. I don't want to say remorseful, necessarily, but I -- the fact that he understood what was going to happen if he didn't complete it. He said he would try kind of thing [sic]."

**{¶9}** Defense counsel represented that Corder had 54 days remaining on his original prison sentence. The court orally found Corder "violated his community control" and stated it was "returning him to prison for the period of 54 days until he completes his sentence." The court made no mention of post-release control.

**{¶10}** The court then issued a judgment entry finding Corder violated the terms and conditions of community control because he failed to successfully complete the STAR program. The court revoked his "community control" and reimposed the original prison sentence with 477 days of credit. The entry states that the court notified Corder "that upon release he will be subject to a **mandatory 5 years of post-release control**" and notified him of the consequences of violating it. (Emphasis sic.) After Corder filed a notice of appeal from this entry, the trial court issued an entry correcting the number of days of credit.

## II. ASSIGNMENTS OF ERROR

**{¶11}** Corder assigns two errors for our review:

1.  The trial court erred as a matter of law when it failed to advise appellant of postrelease control at his probation violation sentencing hearing.

2.  The state failed to submit competent, credible evidence that appellant violated the terms of his probation.

For ease of discussion, we address the assignments of error out of order.

### III.  JUDICIAL RELEASE VIOLATION

{¶12}  In his second assignment of error, Corder contends that the state failed to submit competent, credible evidence that he violated the terms of his "probation."  Corder asserts that Hacker could not provide details about why he received three of the five major concern slips or any of the 44 minor concern slips, which "were likely due to simply negligent, or 'forgetful' conduct."  Regarding the slip for flipping off another resident, Corder states that Hacker could not confirm that profanity is always a " 'major' concern."  Regarding the slip for threatening another resident, Corder states that his "retaliatory behavior was due to another resident's 'major' violation for utilizing profanity," that it is unclear whether the other resident received a major concern slip, and that Hacker's testimony about profanity "leaves open the possibility of subjective enforcement of the facility's rules."  Corder asserts that it is "concerning" that he was discharged from STAR for criminal thinking and antisocial comments and thoughts when there is only evidence that one of his rule violations (the threat) involved criminal intent.  Corder claims "some of the alleged violations at issue were likely due to [his] ongoing mental health and treatment concerns, the exact rationale for initially placing [him] in the STAR program."  He suggests that his demeanor during Allwine's interventions shows he had the capacity to successfully complete the STAR program.  Corder asserts that STAR residents "do not have any type of due process or other fact-finding procedural mechanisms to confirm the

veracity of the allegations of facility workers," which "is concerning as clearly the alleged 'major' violations gave rise to prison time despite [his] total sobriety and class attendance" at STAR.

**{¶13}** "[A] judicial-release-revocation hearing is not a criminal trial, so the state is not required to establish a violation of the terms of judicial release beyond a reasonable doubt." *State v. Westrick*, 196 Ohio App.3d 141, 2011-Ohio-1169, 962 N.E.2d 818, ¶ 21 (3d Dist.). "Instead, the state must show 'substantial' proof that the offender violated the terms of his or her judicial release." *Id.* This standard is akin to the preponderance of the evidence burden of proof, and we will affirm the trial court's finding that a violation has occurred if some competent, credible evidence supports it. *See generally State v. Griffin,* 4th Dist. Athens No. 16CA4, 2017-Ohio-6877, ¶ 15 (applying this standard in the context of a community control revocation hearing, which also requires that the state present substantial proof of a violation).

**{¶14}** Competent, credible evidence supports the finding that Corder violated the terms of his judicial release. The trial court ordered Corder to "enter and successfully complete the full 6-month STAR program." It is undisputed that he did not do this as he was discharged from the program after 169 days. Corder cites no legal support for his suggestion that the state had to provide detailed evidence about the 49 underlying program violations which led to his discharge or that he had a due process right to challenge the violations prior to his discharge. Although Corder suggests that STAR staff could have lied about his rule violations, might have engaged in inconsistent rule enforcement, and did not do enough to help him, Hacker testified that Corder

acknowledged his violations during interventions and received more interventions than the average resident prior to his discharge.

{¶15} For the foregoing reasons, we overrule the second assignment of error.

## IV.  POST-RELEASE CONTROL

{¶16} In his first assignment of error, Corder contends that the trial court erred as a matter of law when it failed to advise him about post-release control at his "probation violation sentencing hearing," i.e., the September 2020 hearing.  Corder asserts that the court violated R.C. 2929.19(B)(2)(d) by not advising him about post-release control at this hearing.  He relies on *State v. Fraley*, 105 Ohio St.3d 13, 2004-Ohio-7110, 821 N.E.2d 995, for the proposition that after a community control violation, a trial court conducts a second sentencing hearing at which it sentences the offender anew and must comply with relevant sentencing statutes.  He cites *State v. Filous*, 2017-Ohio-7203, 95 N.E.3d 573 (4th Dist.), for the proposition that a trial court is required to advise a defendant about post-release control when it revokes community control and imposes a prison term.  Corder asserts that the trial court lacks subject-matter jurisdiction to correct its post-release control error because he has completed his prison sentence.  He asks us to vacate the post-release control portion of his sentence and discharge him.

{¶17} The state concedes that the trial court erred by not advising Corder about post-release control at the September 2020 hearing, that we should vacate the post-release control portion of his sentence, and that the trial court cannot correct its error because Corder has completed his prison sentence.  However, as we explain below, we disagree.

{¶18} Pursuant to R.C. 2953.08(A)(4), "a defendant who is convicted of or pleads guilty to a felony may appeal as a matter of right the sentence imposed upon the defendant" on the ground that "[t]he sentence is contrary to law." "The appellate court may increase, reduce, or otherwise modify a sentence that is appealed under [R.C. 2953.08] or may vacate the sentence and remand the matter to the sentencing court for resentencing * * * if it clearly and convincingly finds" that the record does not support certain findings by the sentencing court or "[t]hat the sentence is otherwise contrary to law." R.C. 2953.08(G)(2).

{¶19} "[A] trial court has a statutory duty to provide notice of postrelease control at the sentencing hearing," and "any sentence imposed without such notification is contrary to law." *State v. Jordan*, 104 Ohio St.3d 21, 2004-Ohio-6085, 817 N.E.2d 864, ¶ 23, *overruled on other grounds*, *State v. Harper*, 160 Ohio St.3d 480, 2020-Ohio-2913, 159 N.E.3d 248. R.C. 2929.19(A) states: "The court shall hold a sentencing hearing before imposing a sentence under this chapter upon an offender who was convicted of or pleaded guilty to a felony * * *." If the sentencing court determines "that a prison term is necessary or required," the court shall "[n]otify the offender that the offender will be supervised under section 2967.28 of the Revised Code[, the statute on post-release control,] after the offender leaves prison if the offender is being sentenced * * * for a felony sex offense * * *." R.C. 2929.19(B)(2)(d) (this provision was in R.C. 2929.19(B)(2)(c) when Corder was originally sentenced). A felony sex offense is "a violation of a section contained in Chapter 2907. of the Revised Code that is a felony." R.C. 2967.28(A)(3); *see* R.C. 2929.01(RR) (in R.C. Chapter 2929, felony sex offense has the same meaning

as in R.C. 2967.28).   An offender is subject to a mandatory five-year period of post-release control for a felony sex offense.   R.C. 2967.28(B)(1).

**{¶20}** In this case, Corder pleaded guilty to three felony sex offenses.   The transcript from his original sentencing hearing is not part of the record before us, so we presume the trial court properly notified Corder about post-release control at that time. *State v. Conn*, 2020-Ohio-370, 151 N.E.3d 974, ¶ 21 (4th Dist.).   The court incorporated that notice into its original sentencing entry.

**{¶21}**  Corder's contention that the trial court erred by not again notifying him about post-release control at the September 2020 hearing is not well-taken.   Corder is correct that in *Fraley*, the Supreme Court of Ohio stated:   "Following a community control violation, the trial court conducts a second sentencing hearing.   At this second hearing, the court sentences the offender anew and must comply with the relevant sentencing statutes."  *Fraley*, 105 Ohio St.3d 13, 2004-Ohio-7110, 821 N.E.2d 995, at ¶ 17.  He is also correct that *Filous* stands for the proposition that when a trial court revokes community control and imposes a prison term, the court must orally advise the defendant about post-release control.  *Filous*, 2017-Ohio-7203, 95 N.E.3d 573, at ¶ 20-23.  However, *Fraley* and *Filous* set forth these principles in situations in which the offender's *original sentence* was to community control, the trial court revoked community control, and the court was sentencing the offender to prison *for the first time*.  *Fraley* at ¶ 1-2, 5; *Filous* at ¶ 3, 21-23.  Here, Corder's *original sentence* was to prison time, the trial court placed him on community control as part of its grant of judicial release, and the court *reimposed the original prison sentence* with credit for time served when it revoked judicial release.

**{¶22}** "Even though 'community control sanctions are imposed when judicial release is granted, judicial release is different from and not synonymous with community control.' " *State v. Phipps*, 2021-Ohio-258, 167 N.E.3d 576, ¶ 18 (3d Dist.), quoting *State v. Cox*, 3d Dist. Auglaize Nos. 2-09-31 & 2-09-32, 2010-Ohio-3799, ¶ 9, fn. 3. "[J]udicial release is governed by a different statute than community control." *Filous* at ¶ 25. " '[T]he rules dealing with a violation of an original sentence of community control should not be confused with those dealing with a violation of community control while on judicial release.' " *State v. King*, 4th Dist. Lawrence No. 19CA10, 2020-Ohio-1512, ¶ 13, quoting *State v. Perry*, 4th Dist. Athens No. 13CA12, 2013-Ohio-4066, ¶ 12.

**{¶23}** "Pursuant to R.C. 2929.15, a trial court may impose community control sanctions as part of an offender's original sentence." *Phipps* at ¶ 19. The court "shall notify the offender that, if the conditions of the sanction are violated * * * the court may impose a longer time under the same sanction, may impose a more restrictive sanction, or may impose a prison term on the offender and shall indicate the specific prison term that may be imposed as a sanction for the violation * * *." R.C. 2929.19(B)(4). If the offender violates the conditions of community control and the trial court imposes a prison term, it "shall not exceed the prison term specified in the notice provided to the offender at the sentencing hearing * * *." R.C. 2929.15(B)(3). Thus, the trial court can impose the previously specified prison term or a lesser one, but a not a greater one. *Griffin*, 4th Dist. Athens No. 16CA4, 2017-Ohio-6877, at ¶ 18, citing *State v. Brooks*, 103 Ohio St.3d 134, 2004-Ohio-4746, 814 N.E.2d 837, ¶ 22.

**{¶24}** "[P]ursuant to R.C. 2929.20, a trial court may grant judicial release upon the motion of an eligible offender who is *currently* serving a term of incarceration." (Emphasis sic.) *Phipps* at ¶ 21. R.C. 2929.20(K) states:

> If the court grants a motion for judicial release under this section, the court shall order the release of the eligible offender, shall place the eligible offender under an appropriate community control sanction, under appropriate conditions, and under the supervision of the department of probation serving the court *and shall reserve the right to reimpose the sentence that it reduced if the offender violates the sanction.* * * *

(Emphasis added.) This provision allows the trial court " 'merely to reinstate the reduced, original prison term upon a violation of the conditions of early judicial release.' " *Filous*, 2017-Ohio-7203, 95 N.E.3d 573, at ¶ 25, quoting *State v. McConnell*, 143 Ohio App.3d 219, 224, 757 N.E.2d 1167 (3d Dist.2001). " '[T]he trial court is bound by the specific term of incarceration imposed at the original sentencing hearing. This means the offender serves the remainder of the exact term of incarceration that has only been suspended by the grant of judicial release.' " *Id.*, quoting *State v. Abrams*, 7th Dist. Mahoning No. 15 MA 0217, 2016-Ohio-5581, ¶ 14.

**{¶25}** In *Filous*, the trial court originally sentenced the defendant to five years of community control. *Filous* at ¶ 3. During the sentencing hearing, the court did not mention post-release control, but its sentencing entry stated post-release control was optional for three years if he violated community control. *Id.* at ¶ 3, 13. The defendant violated community control, and the trial court terminated it and imposed prison terms for his offenses. *Id.* at ¶ 4. At the violation hearing, the court did not mention post-release control, but its subsequent judgment entry stated that it was optional for three years. *Id.* The court later granted judicial release. *Id.* The judicial release entry stated that the defendant was placed on five years of community control, that the court reserved the right

to reimpose the sentence that was reduced if he violated the terms of judicial release/community control, and that the defendant was subject to an optional three-year term of post-release control if the court reimposed his prison sentence. *Id.* Subsequently, the court found he violated the terms of judicial release/community control, reimposed the suspended prison sentence, and orally advised the defendant that he was subject to a mandatory three-year term of post-release control. *Id.* at ¶ 1, 5. The court memorialized this decision in the judgment entry from which the defendant appealed. *Id.* at ¶ 5.

**{¶26}** On appeal, the defendant argued that "the trial court erred by imposing post-release control for a prison term imposed for a community control violation." *Id.* at ¶ 6. We rejected his argument but found "the trial court failed to properly impose post-release control when it terminated Appellant's community control *and sent him to prison the first time* * * *." (Emphasis added.) *Id.* at ¶ 7. We explained that when the trial court originally sentenced the defendant to community control, it did not have to notify him about post-release control. *Id.* at ¶ 19. However, when it revoked community control and sentenced him to prison, it had to notify him about post-release control because under *Fraley*, the court was sentencing him anew. *Id.* at ¶ 20-23. As a result, based on then existing case law, we determined that the imposition of post-release control was void.[1] *Id.* at ¶ 22-23. The trial court attempted to correct its error "when Appellant's judicial release was revoked and he was returned to prison." *Id.* at ¶ 24. However, we explained that "the sentencing at a judicial release revocation hearing is much more limited than the

---

[1] Later, in *State v. Harper,*160 Ohio St.3d 480, 2020-Ohio-2913, 159 N.E.3d 248, ¶ 42-43, the Supreme Court of Ohio held that as long as a trial court has jurisdiction to act, any error in the imposition of post-release control renders the sentence "voidable, not void," and "any claim that the trial court has failed to properly impose postrelease control in the sentence must be brought on appeal from the judgment of conviction or the sentence will be subject to res judicata."

sentencing at a community control revocation hearing, which was the situation in *Fraley,* * * * where the court reasoned an offender is sentenced 'anew.' " *Id.* at ¶ 25. We stated that because a trial court "is limited to reimposing the sentence previously imposed upon a violation of judicial release, it stands to reason that the court cannot, at that time, correct a sentencing error that occurred when the sentence was originally imposed." *Id.* And because the defendant had completed his prison sentence, we concluded that the trial court no longer had jurisdiction to correct his sentence. *Id.* at ¶ 26.

**{¶27}** In *State v. Thompson,* 3d Dist. Crawford Nos. 3-16-01 & 3-16-12, 2016-Ohio-8401, the trial court originally sentenced the defendant to prison time. *Id.* at ¶ 4. The court later granted judicial release, suspended the remainder of his prison sentence, and released him under conditions of judicial release. *Id.* at ¶ 5. Subsequently, the court found that he violated the conditions of judicial release and reimposed the remainder of his original sentence. *Id.* at ¶ 6. After the defendant filed a notice of appeal, the state filed a "Motion on Defendant's Motion to Correct a Judgment of Conviction" in the trial court. *Id.* at ¶ 8. The motion evidently related to a purported deficiency in the imposition of post-release control because the court conducted a hearing on the motion at which it notified the defendant about post-release control and then issued a judgment entry informing him of post-release control. *Id.* at ¶ 8, 17. The defendant also filed an appeal from that entry, and the appellate court consolidated the appeals. *Id.* at ¶ 8.

**{¶28}** In affirming, the appellate court rejected the defendant's argument that when the trial court revoked judicial release, it had to fully consider statutory sentencing factors "as if it were sentencing him anew." *Id.* at ¶ 14. The appellate court explained: "When the trial court is reimposing the remainder of the defendant's original sentence

after revoking his judicial release, the trial court need not make the statutory findings that are required when a felony sentence is originally imposed." *Id.* The appellate court also rejected the contention that the trial court lacked jurisdiction to act on the state's motion during the pendency of the first appeal. *Id.* at ¶ 17, 28. The appellate court presumed the trial court gave the defendant notice of post-release control at the original sentencing hearing because he did not provide a transcript of that hearing. *Id.* at ¶ 22. The appellate court also found that the original sentencing entry was valid because it included the post-release control sanction imposed by the court. *Id.* at ¶ 27. The appellate court found that "[b]ecause [the] original sentencing entry is not void and does not contain a clerical error, there is no need for a subsequent sentencing entry." *Id.* at ¶ 28. The entry issued after the defendant filed his first appeal was "surplusage" and had "no legal effect," *id.* at ¶ 28, and the defendant "was not prejudiced by any 're-notification' of his postrelease-control sanction," *Id.* at ¶ 21.

{¶29} Based on the foregoing authorities, we conclude that when a trial court sentences an offender to a prison term, grants judicial release, but later revokes judicial release and reimposes the prison sentence that it reduced, the appropriate time for the court to give a R.C. 2929.19(B)(2)(d) post-release notification is when the prison term is originally imposed. Nothing in R.C. 2929.20(K) or R.C. 2929.19(B)(2)(d) suggests that when a trial court revokes judicial release, it must orally renotify the offender about post-release control. Moreover, Corder has not directed this court to any legal authority that stands for that proposition. Therefore, we conclude that the trial court had no duty to orally renotify him about post-release control at the September 2020 hearing when it revoked his judicial release. Accordingly, we overrule the first assignment of error.

## V.  CONCLUSION

**{¶30}** Having overruled the assignments of error, we affirm the trial court's judgment.

JUDGMENT AFFIRMED.

## JUDGMENT ENTRY

It is ordered that the JUDGMENT IS AFFIRMED and that appellant shall pay the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the HOCKING COUNTY COURT OF COMMON PLEAS to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed 60 days upon the bail previously posted. The purpose of a continued stay is to allow appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the 60-day period, or the failure of the appellant to file a notice of appeal with the Supreme Court of Ohio in the 45-day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of 60 days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Smith, P.J. & Wilkin, J.: Concur in Judgment and Opinion.


For the Court


BY: _____
    Michael D. Hess, Judge




### NOTICE TO COUNSEL

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**