**[Cite as *State v. Wade*, 2021-Ohio-2949.]**

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 29017 |
| | : | |
| v. | : | Trial Court Case Nos. 2020-CR-1551 |
| | : | and 2020-CR-1595 |
| CHARLES WADE | : | |
| | : | (Criminal Appeal from |
| Defendant-Appellant | : | Common Pleas Court) |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 27th day of August, 2021.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by J. JOSHUA RIZZO, Atty. Reg. No. 0099218, Assistant Prosecuting Attorney, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, 301 West Third Street, Dayton, Ohio 45422
    Attorney for Plaintiff-Appellee

MICHAEL J. SCARPELLI, Atty. Reg. No. 0093662, 210 West Main Street, Troy, Ohio 45373
    Attorney for Defendant-Appellant

. . . . . . . . . . . . .

WELBAUM, J.

{¶ 1} Defendant-appellant, Charles Wade, appeals from the judgments of the Montgomery County Court of Common Pleas revoking his community control sanctions. For the reasons outlined below, the judgments of the trial court will be affirmed.

**Facts and Course of Proceedings**

{¶ 2} On July 14, 2020, Wade pled guilty in Montgomery C.P. No. 2020-CR-1595 to one count of domestic violence in violation of R.C. 2919.25(A), a fourth-degree felony. Wade also pled guilty in Montgomery C.P. No. 2020-CR-1551 to one count of harassment with a body substance in violation of R.C. 2921.38(B), a fifth-degree felony. Following Wade's guilty pleas, on July 28, 2020, the trial court sentenced Wade to serve a term of community control sanctions not to exceed five years for both cases.

{¶ 3} As part of his community control sanctions, the trial court required Wade to abide by several conditions, including that he attend and complete the MonDay Program. The trial court also advised Wade that if he violated any condition of his community control, or violated any law, it could impose a longer time under the same sanction, a more restrictive sanction, 12 months of local incarceration, or up to a total term of 30 months in prison, i.e., 18 months for domestic violence and 12 months for harassment with a bodily substance, served consecutively.

{¶ 4} On November 2, 2020, Wade's probation officer filed notices of violation of community control in both cases asserting that Wade had failed to complete the MonDay Program as ordered by the trial court. The notices indicated that Wade had been clinically discharged from the MonDay Program on October 30, 2020.

{¶ 5} On December 22, 2020, the trial court held a revocation hearing. During this hearing, the State presented testimony from Wade's probation officer, Ryan Addison. Addison testified that completing the MonDay Program was a condition of Wade's community control and that Wade had violated that condition when he was unsuccessfully discharged from the MonDay Program due to his noncompliant behavior. During his testimony, Addison identified State's Exhibit 4, which was a discharge summary prepared by Wade's clinician at the MonDay Program. Addison testified that the discharge summary outlined the reasons for Wade's unsuccessful discharge. The clinician who authored the discharge summary did not testify at the revocation hearing. The discharge summary was admitted into evidence without any objection from Wade.

{¶ 6} The only other witness to testify at the revocation hearing was Wade himself. During his testimony, Wade claimed that he suffered from certain physical and mental ailments that negatively affected his performance in the MonDay Program. Wade also testified that he performed every task that had been required of him and that he had not willfully violated his community control sanctions.

{¶ 7} After the revocation hearing, the trial court issued its decision from the bench and revoked Wade's community control sanctions. The trial court based its decision on the information contained in the discharge summary. Specifically, the trial court stated:

I give Mr. Wade great credit for the comments that he made during his * * * testimony. And I have to weigh that against the information from MonDay Program provided in its discharge of Mr. Wade, as well. And some of that information includes that he minimally participated in individual and group treatment; and while he did complete mandatory assignments,

his treatment work was done quickly and with no internal thought; he did not complete his parenting or anger management workbooks as required for the completion of those classes; his work was lacking of depth about his court issues; he did not apply the information, coping strategies or intervention from his treatment into practice or how to deal with life stressors; and while he did participate in individual sessions with this clinician, frequently the session would devolve into complaints about MonDay, complaints about his unresolved medical issues or threats of pending lawsuits against MonDay; he would make statements like [cognitive behavioral therapy] doesn't work and I won't fake it to make it.

When he entered the Program, he reported that he didn't need to be there because his only problem was alcohol and he had already obtained sobriety prior to entry and efforts to have him address those alcohol issues and other problematic behaviors were largely unsuccessful. And he had significant difficulty getting along with others in the Program specifically the staff at the MonDay Program. And they concluded that his prognosis for success in the Program was poor and, therefore, the MonDay Program made the determination to unsuccessfully discharge him from the MonDay Program. And there's no dispute that he was unsuccessfully discharged from the MonDay Program.

He was there for 80 days, filed 25 grievances while he was there, also stopped staff on the day floor several times to complain about his various concerns, submitted 19 requests to see staff which exceeded the

typical resident requests. And although he did successfully complete the two behavioral contracts that he was placed upon, the determination was made by the MonDay Program that the level of attention and care that Mr. Wade needed simply exceeded the ability of the Program. And so it unsuccessfully discharged him from the Program.

And it is that unsuccessful discharge from the MonDay Program that is the basis for the petitions to revoke him from supervision. And, therefore, as a result, the Court will find that there is substantial and significant evidence that Mr. Wade has violated the terms and conditions of his supervision and it is appropriate then at this time to impose an alternative sentence upon him.

Hearing Trans. (Dec. 22, 2020), p. 58-60.

{¶ 8} Following its decision to revoke Wade's community control sanctions, the trial court sentenced Wade to serve 18 months in prison for domestic violence in Case No. 2020-CR-1595 and 12 months in prison for harassment with a bodily substance in Case No. 2020-CR-1551. The trial court ordered these sentences to be served concurrently for a total term of 18 months in prison. Wade now appeals from the trial court's judgment revoking his community control sanctions and sentencing him to prison, raising two assignments of error for our review.

**First Assignment of Error**

{¶ 9} Under his first assignment of error, Wade contends that the trial court committed plain error by relying solely on hearsay evidence, i.e., the discharge summary,

to revoke his community control sanctions. To support this claim, Wade contends that the admission and consideration of the discharge summary violated his due process right to confront adverse witnesses. Upon review, we find no plain error that necessitates reversal in this case.

{¶ 10} " 'Revocation hearings are not subject to the rules of evidence, thus allowing for the admission of hearsay evidence.' " *State v. McDargh*, 2d Dist. Clark No. 2015-CA-27, 2016-Ohio-1132, ¶ 12, quoting *State v. Westrick*, 196 Ohio App.3d 141, 2011-Ohio-1169, 962 N.E.2d 818 (3d Dist.). (Other citation omitted.) This is because a " 'revocation hearing is an informal proceeding, not a criminal trial[.]' " *Id.*, quoting *Columbus v. Bickel*, 77 Ohio App.3d 26, 36, 601 N.E.2d 61 (10th Dist.1991), citing *State v. Miller*, 42 Ohio St.2d 102, 106, 326 N.E.2d 259 (1975). Therefore, during revocation hearings, " 'the trier of fact should be able to consider any reliable and relevant evidence to determine whether the [defendant] has violated the conditions of his [supervision].' " *Id.*

{¶ 11} "Nevertheless, in some circumstances, the admission of hearsay evidence at a revocation hearing can deny the defendant his due process right to confront and cross-examine adverse witnesses." *State v. Brandon*, 2d Dist. Montgomery No. 23336, 2010-Ohio-1902, ¶ 19, citing *State v. Dunning*, 2d Dist. Greene No. 08-CA-07, 2009-Ohio-691, ¶ 10. This includes, for example, instances where " '[hearsay] evidence is the only evidence presented and is crucial to a determination of a probation violation.' " *McDargh* at ¶ 13, quoting *State v. Ryan*, 3d Dist. Union No. 14-06-55, 2007-Ohio-4743, ¶ 9, citing *State v. Ohly*, 166 Ohio App.3d 808, 2006-Ohio-2353, 853 N.E.2d 675 (6th Dist.).

{¶ 12} As noted above, Wade contends that the trial court's decision revoking his

community control sanctions was based solely on hearsay evidence, i.e., the discharge summary, thereby violating his right to due process. Wade, however, did not object to the admission of the discharge summary into evidence, let alone claim that its admission violated his due process rights. "The failure to object to a due process violation during a community control revocation hearing waives all but plain error." *State v. Hatton*, 2d Dist. Montgomery No. 25959, 2014-Ohio-3354, ¶ 10, citing *State v. Blakeman*, 2d Dist. Montgomery No. 18983, 2002 WL 857659, *3 (May 3, 2002). "For plain error to exist, the defect in the trial proceedings must be obvious and must have affected the outcome of the trial." *State v. Davis*, 2d Dist. Montgomery No. 28923, 2021-Ohio-1833, ¶ 18, citing *State v. Payne*, 114 Ohio St.3d 502, 2007-Ohio-4642, 873 N.E.2d 306, ¶ 16.

{¶ 13} Upon review, we find that the discharge summary was not the only evidence presented at Wade's revocation hearing, as the State presented testimony from Wade's probation officer, Ryan Addison. Addison testified that he became Wade's probation officer after Wade entered the MonDay Program, and that Wade was required to complete the MonDay Program as a condition of his community control sanctions. Addison also testified that Wade was not compliant in the MonDay Program and was terminated from the program unsuccessfully. Addison further testified that prior to Wade's unsuccessful termination, he, Wade, and Wade's MonDay clinician attended two interventions during which they discussed Wade's behavior.

{¶ 14} Addison testified that during the first intervention, they discussed Wade's "overall noncompliance [as] far as [Wade] being defiant, argumentative, utilizing grievances as a way to get attention, threatening suicide when [Wade] didn't get his way, [and] constantly complaining of his medical state with his * * * bowels * * * because he

wasn't able to use the restroom."  Hearing Trans. (Dec. 22, 2020), p. 28.  Addison testified that they also discussed Wade's complaints of wrist pain and noted that "[i]t was later found that * * * [Wade could] be seen on video doing pushups without any type of issue [.]"  *Id.*

{¶ 15} Addison additionally testified that the second intervention "took place because [of Wade's] unwillingness to change his behavior and his unwillingness to work on himself and work on the things that got him there such as * * * his addiction to * * * alcohol and not fully engaging in the program."  *Id.* at 29.  Addison testified that Wade was "pretty upset" during both interventions and that Wade was acting like a victim by blaming and accusing others.  *Id.*  Addison also testified that Wade's behavior did not change from the first to the second intervention.

{¶ 16} With regard to the discharge summary, Addison testified that, per protocol, he received the discharge summary, which outlined the reasoning for Wade's unsuccessful discharge.  Most significantly, Addison testified that his testimony regarding Wade's performance was outlined in the discharge summary.  This indicated (and the actual discharge summary confirmed) that Wade's discharge from the program was based, at least in part, on the issues that Addison testified about at the revocation hearing.

{¶ 17} Because Addison's testimony touched on the reasons for Wade's unsuccessful discharge, we find that Addison's testimony, standing alone, would have been sufficient for the trial court to revoke Wade's community control sanctions. Although the record indicates that the trial court relied solely on the discharge summary when revoking Wade's community control, even without the discharge summary, the trial

court could have revoked Wade's community control based on Addison's testimony. Therefore, Wade has not established plain error with regard to the trial court's relying solely on the discharge summary, as the outcome of the revocation proceeding would not have been different had the discharge summary not been admitted into evidence. *See generally State v. Pullen-Morrow*, 2d Dist. Montgomery No. 24862, 2012-Ohio-3605, ¶ 24-25 (finding no plain error where the result of a revocation hearing would not have been different even if the discharge summary/testimony regarding the contents of the discharge summary had been excluded).

{¶ 18} Wade's first assignment of error is overruled.

**Second Assignment of Error**

{¶ 19} Under his second assignment of error, Wade contends that the trial court's decision to revoke his community control sanctions was an abuse of discretion. Specifically, Wade argues that the trial court's decision to revoke his community control was unreasonable in light of the testimony he provided at the revocation hearing. We disagree with Wade's claim.

{¶ 20} "The right to continue on community control depends upon compliance with the conditions of community control and is a matter within the sound discretion of the trial court." *State v. Eastman*, 2d Dist. Clark No. 2020-CA-5, 2021-Ohio-392, ¶ 13, citing *State v. Lewis*, 2d Dist. Montgomery No. 23505, 2010-Ohio-3652, ¶ 11. "Accordingly, we review the trial court's revocation of community control for an abuse of discretion." *Id.*, citing *State v. Morgan*, 2d Dist. Montgomery No. 26132, 2014-Ohio-5071, ¶ 11. "A trial court abuses its discretion when it makes a decision that is unreasonable,

unconscionable, or arbitrary." (Citation omitted.) *State v. Darmond*, 135 Ohio St.3d 343, 2013-Ohio-966, 986 N.E.2d 971, ¶ 34. "An abuse of discretion most often involves an unreasonable decision that is not supported by a sound reasoning process." *State v. Pate*, 2021-Ohio-1838, __ N.E.3d __, ¶ 36 (2d Dist.), citing *AAAA Ents., Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990).

{¶ 21} As previously noted, Wade claims that the trial court's decision revoking his community control sanctions was unreasonable in light of his testimony at the revocation hearing. Specifically, Wade testified that his performance in the MonDay Program was affected by physical injuries that he sustained from being beaten in jail by fellow inmates prior to entering the program. Wade testified that his ribs were broken and that one of his ribs punctured his intestines. Wade testified that the puncture resulted in a blood clot that led to a prolonged bowel obstruction, which required him to be on laxatives for an extended period of time. According to Wade, his bowel condition caused him embarrassment and pain on a daily basis.

{¶ 22} In addition to his physical condition, Wade testified that he suffered from mental issues such as paranoia and delusions, which caused him to feel as if MonDay staff members were trying to get him kicked out of the program. Wade also testified that he had been diagnosed with post-traumatic stress disorder. According to Wade, his physical and mental ailments were the source of his negative personal interactions with MonDay staff and were the cause of the several grievances he filed while in the program. Wade testified that he otherwise completed all the required tasks in the program and that he never willfully violated the conditions of his community control sanctions.

{¶ 23} It was, however, within the province of the trial court to determine what weight, if any, to give to Wade's testimony. Simply because Wade disagrees with the trial court's resolution of the factual disputes in this case does not indicate that the trial court's decision revoking his community control was an abuse of discretion. Therefore, because the evidence established that Wade was required to complete the MonDay Program as a condition of his community control sanctions and that Wade was unsuccessfully discharged from the MonDay Program due to his noncompliant behavior, the trial court's decision revoking Wade's community control for failing to complete the MonDay Program was not unreasonable and thus not an abuse of discretion.

{¶ 24} Wade's second assignment of error is overruled.

## Conclusion

{¶ 25} Having overruled both assignments of error raised by Wade, the judgments of the trial court are affirmed.

. . . . . . . . . . . . .

DONOVAN, J. and HALL, J., concur.

Copies sent to:

Mathias H. Heck, Jr.
J. Joshua Rizzo
Michael J. Scarpelli
Hon. Mary Lynn Wiseman